257 P.3d 1162

**MARIO G., Appellant,**

v.

**ARIZONA DEPARTMENT OF
ECONOMIC SECURITY,
Camila G., Appellees.**

**No. 1 CA–JV 10–0220.**

Court of Appeals of Arizona,
Division 1, Department C.

May 17, 2011.

Thomas C. Horne, Arizona Attorney General By Michael F. Valenzuela, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Law Office of Anne M. Williams By Anne M. Williams, Tempe, Attorneys for Appellant.

## OPINION

BROWN, Judge.

¶ 1 Mario G. ("Father") appeals the juvenile court's order terminating his parental rights to his child, Camila.[1] The issue we address is whether Arizona Revised Statutes ("A.R.S.") section 8–533(B)(2) (Supp. 2010), which permits termination of the parent-child relationship under circumstances of willful abuse, extends to circumstances in which ADES seeks to sever the parental rights to a child born after the abuse of a different child. For the following reasons, we hold that parental rights may be severed as to a child born after the abuse occurs, regardless of whether that child was subjected to any abuse, provided that an adequate nexus exists between the prior conduct and the risk of future abusive behavior by the parent.[2]

## BACKGROUND

¶ 2 Father is the biological father of Camila, who was born in 2009. Nine months before Camila's birth, Father's rights to his biological son, Alberto, were terminated pursuant to A.R.S. § 8–533(B)(2) due to abuse of a different child, Gabriela, while she resided in Father's home while Father and Mother were living together. Gabriela was Mother's child from a prior relationship. Father also had a child, Junior, from a prior relationship.[3]

¶ 3 In March 2007, Gabriela, age seven months, was taken to a hospital for a head injury, which Mother claimed occurred after Gabriela fell from a baby swing. Gabriela was released later that day. A few days later, Gabriela was again taken to the hospital because she was unable to move her right leg. She was treated for a number of serious injuries, including a femur fracture, tibia fractures, and multiple compression fractures of her spine. Mother attributed these injuries to two other young children in the home, stating that they played aggressively with Gabriela.

¶ 4 As a result of Gabriela's injuries, the Arizona Department of Economic Security ("ADES") removed the children from the parents' care and filed a dependency petition. After providing services to the parents, ADES dismissed the dependency and Mother and the children resumed living with Father. During this time, Mother gave birth to Alberto, Father's biological child.

¶ 5 Approximately three weeks after the dependency was dismissed, in March 2008, Gabriela was again taken to the hospital, where she was diagnosed with an internal intestinal injury that required surgery. During surgery, the surgeon found a large volume of free-flowing blood in Gabriela's abdomen that was so substantial it required a blood transfusion. Mother and Father informed police that Gabriela was in Mother's care when she became symptomatic, although Gabriela was actually in the exclusive care of Junior, then twelve years of age. When questioned by police, Junior eventually confessed that Gabriela was in his care at the time and that he injured her. ADES subsequently filed a petition for termination of Father's and Mother's parental rights as to Gabriela and Alberto as a result of the abuse that Gabriela sustained.

---

1. Mother's parental rights were also terminated as to Camila, but her appeal was dismissed as untimely.

2. Section 8–533(B)(2) allows severance on the basis of neglect or willful abuse. Because the statute defines "abuse" as including a situation in which the parent knew that another was abus-

ing a child, which describes the situation presented here, we refer to the cause of Gabriela's injuries as stemming from "abuse."

3. Although Mother and Father had other children, we only reference those children that are pertinent to the facts of this case.

¶ 6 At the severance hearing, physicians opined that the fractures and abdominal injuries were non-accidental and that they could not have occurred absent blunt force trauma. Moreover, the physicians opined that the fractures could not have resulted from the "aggressive play" activities described by Mother. The court also learned that Junior pled guilty to child abuse with respect to the abdominal injuries suffered by Gabriela, but did not plead guilty to the incident resulting in Gabriela's fractures.

¶ 7 In March 2009, the juvenile court ordered that severance was appropriate as to Gabriela and Alberto pursuant to § 8–533(B)(2) because Mother and Father "reasonably knew or should have known that a person was or may have been abusing or neglecting child Gabriela ... Assuming that [Junior] caused the abdominal injuries sustained by Gabriela, then it is clear that Mother and [Father] both failed to protect the child Gabriela from the abuse by another." [4] The court also found that the evidence "clearly established that Mother and [Father] conspired to misrepresent the truth to CPS investigators and [a] police investigator investigating the factual circumstances surrounding Gabriela's abdominal injuries.... The evidence established that they conspired to lie to authorities simply to protect the individual whom they knew or suspected caused the abdominal injuries." Both Father and Mother appealed the severance order, but Father's appeal was dismissed as untimely. As to Mother, this court affirmed the juvenile court's decision. *Maria G. v. Ariz. Dep't of Econ. Sec.*, 1 CA–JV 09–0054, 2009 WL 4981585 (Ariz.App. Dec. 22, 2009) (mem. decision).

¶ 8 In December 2009, Mother gave birth to Camila. ADES immediately took Camila into custody and filed a dependency petition soon thereafter. In April 2010, ADES filed the instant petition for termination on the grounds of neglect and abuse under § 8–533(B)(2) and prior severance for the same cause within a two-year period under § 8–533(B)(10). In July 2010, ADES submitted a social study which recognized that the parents had been participating in services and that they interacted positively with Camila. ADES indicated its concerns, however, about the extensive abuse that had occurred with Gabriela and that the parents had hindered the investigation into that abuse. Thus, the social study recommended that the parents' rights be terminated to allow implementation of a plan of adoption.

¶ 9 The parents contested both the dependency and the severance petition relating to Camila and the juvenile court held a concurrent dependency/severance hearing in August 2010. The court took judicial notice of the severance findings in the case stemming from Gabriela's abuse and admitted into evidence transcripts from that case as well as this court's memorandum decision. Additionally, ADES presented evidence that Mother and Father had pled guilty to hindering prosecution as a result of the false information they provided regarding the circumstances surrounding Gabriela's prior abdominal injuries.

¶ 10 The juvenile court granted the motion to sever, finding ADES had proven by clear and convincing evidence the grounds set forth under § 8–533(B)(2), and that ADES established an adequate nexus between the abuse suffered by Gabriela and the risk of harm that such abuse would occur to Camila. Because it granted the motion to sever Father's parental rights on this ground, the juvenile court declined to consider the separate ground set forth under § 8–533(B)(10). The court also found that termination was in the best interests of the child. Father timely appealed.

## DISCUSSION

¶ 11 "Although a parent's right to care, custody, and control of his or her children has long been recognized as fundamental, it is not absolute." *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 78, ¶ 6, 117 P.3d 795, 797 (App.2005) (citations omitted). The fundamental right to parent may be terminated under "statutorily enumerated conditions following specified procedures." *Id.* To justify such termination, the juvenile court must find, by clear and convincing evi-

---

4. Mother's rights to her four other children were also terminated.

dence, the existence of at least one ground set forth in A.R.S. § 8–533. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12, 995 P.2d 682, 685 (2000). Additionally, the court is obligated to find by a preponderance of the evidence that termination is in the best interests of the child. *Id.*

¶ 12 We view the evidence in a severance case in the light most favorable to sustaining the juvenile court's findings and will affirm unless, as a matter of law, no reasonable fact-finder could have found that the evidence satisfied the applicable burden of proof. *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 95, ¶ 10, 210 P.3d 1263, 1266 (App.2009). We review de novo, however, the juvenile court's interpretation of a statute. *See Linda V.*, 211 Ariz. at 78, ¶ 7, 117 P.3d at 797.

**I. Severance Based on Willful Abuse**

¶ 13 Under § 8–533(B)(2), the juvenile court may properly sever a parent's rights if the parent has "neglected or willfully abused a child." "Abuse" includes "serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." A.R.S. § 8–533(B)(2).

¶ 14 Father asserts that the juvenile court erred when it interpreted § 8–533(B)(2) as permitting termination of parental rights to a child born after abuse had already occurred. He contends further that absent a temporal limitation, the statute would allow ADES to sever the parent-child relationship as to any child born in the future, continuing "in perpetuity." When construing a statute, we first look at the plain wording of the statute. *In re Adam P.*, 201 Ariz. 289, 291, ¶ 12, 34 P.3d 398, 400 (App. 2001). When a "statute is clear and unambiguous, we apply it without using other means of statutory construction" unless application of the plain meaning would lead to impossible or absurd results. *Hayes v. Cont'l Ins. Co.*, 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994).

¶ 15 Father suggests that this court has already determined that § 8–533(B)(2) is ambiguous based on our decision in *Linda V.*, 211 Ariz. at 79, ¶ 14, 117 P.3d at 798. In *Linda V.*, we addressed whether the legislature's reference to "a child" in § 8–533(B)(2) was ambiguous on its face; however, we ultimately concluded that "when the statute is examined in light of the pre-existing statutory language, the legislature's meaning is clear." *Id.* We held that § 8–533(B)(2) permits termination of parental rights to a child who has not been abused or neglected, upon proof that the parents abused or neglected another child or permitted another to abuse or neglect another child. *Linda V.*, 211 Ariz. at 79, ¶ 14, 117 P.3d at 798. Our analysis of the statute, however, was confined to addressing the propriety of severing parental rights based on the circumstances of that case—the mother's rights were terminated as to her child who was alive and present when the child's sister was killed by the mother's boyfriend. *Id.* at 77, ¶¶ 3–5, 117 P.3d at 796. In a footnote, we commented:

> Although, in this case the constitutional requirement of showing a nexus between the abuse or neglect committed on the child who was abused . . . and the risk that such abuse would occur to a different child . . . to whom parental rights were being severed, was established, we are not faced with, nor do we address, a scenario where there has been prior conduct by a parent that is remote in time with regard to the child to whom parental rights have been severed.

*Id.* at 80 n. 3, ¶ 17, 117 P.3d at 799 n. 3.

¶ 16 Thus, the issue presented here, whether a court may properly sever a parent's rights to a child who was not yet born when prior abuse occurred pursuant to § 8–533(B)(2), was not directly addressed by our court in *Linda V.* We have no trouble concluding, however, that the legislative framework for termination of parental rights encompasses the situation presented here. We disagree with Father's assertion that a definitive time limitation is required by § 8–533 because ADES must still prove that a "constitutional nexus" between the prior abuse and the risk of future abuse to a different child. *See id.*, 211 Ariz. at 80 n. 3, ¶ 17, 117 P.3d at 799 n. 3; *Galloway v. Vanderpool*,

205 Ariz. 252, 256, ¶ 17, 69 P.3d 23, 27 (2003) ("Once published, our interpretation [of a statute] becomes part of the statute."). Moreover, other severance grounds enumerated under § 8–533 reflect specific time limitations that must be satisfied before severance is appropriate; we therefore presume that if the legislature intended to impose a definitive time limitation here, it would have done so.[5] *Luchanski v. Congrove*, 193 Ariz. 176, 179, ¶ 14, 971 P.2d 636, 639 (App.1998) ("When the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded.").

¶ 17 Interpreting § 8–533(B)(2) in this manner is consistent with the legislative goal of protecting children from future abuse. *See Linda V.*, 211 Ariz. at 80, ¶ 15, 117 P.3d at 799 (finding that "the amendment [to § 8–533(B)(2) ] was intended to give ADES the authority to remove children from parents who had already murdered or *seriously injured* other children although there was no evidence that the parent had injured the child at issue") (emphasis added); *see also* Arizona State Senate, Minutes of Comm. on Appropriations, 43rd Leg., 1st Reg. Sess. (Mar. 26, 1997) (recording comment from state senator that statute was implemented to "protect ... children in a family from risk" after another child has been seriously injured, mentally impaired, or murdered). Therefore, applying § 8–533(B)(2) to children born after prior incidents of serious abuse against different children furthers its legislative purposes, provided the requisite nexus exists.

¶ 18 We also find support for our conclusion from courts in other jurisdictions considering similar issues. *See C.B. v. Dep't of Children & Families*, 879 So.2d 82 (Fla.Dist. Ct.App.2004) (affirming order severing moth-er's rights to child born six months after severance of mother's other three children based on prior abuse); *In re J.C.*, 396 Ill. App.3d 1050, 336 Ill.Dec. 695, 920 N.E.2d 1285, 1291 (2009) (recognizing that "when faced with evidence of prior neglect by parents, the juvenile court should not be forced to refrain from taking action until each particular child suffers an injury") (internal quotations and citations omitted); *In re Powers*, 208 Mich.App. 582, 528 N.W.2d 799, 804 (1995) (finding termination appropriate because "the doctrine of anticipatory neglect or abuse should be extended to guarantee the protection of a child who is not yet born, i.e., because of the past conduct of another person, there is good reason to fear that the second child, when born, will also be neglected or abused"), *superseded in part on other grounds by statute as recognized in In re Jenks*, 281 Mich.App. 514, 760 N.W.2d 297, 299 n. 2 (2008); *In re Hunter YY.*, 18 A.D.3d 899, 795 N.Y.S.2d 116, 118 (N.Y.App.Div. 2005) (explaining that "a derivative finding of abuse may be justified if the prior finding was proximate in time to the derivative proceeding such that it can be reasonably concluded that the conditions still exist" and the court must determine whether the evidence of the prior finding "demonstrates such an impaired level of parental judgment as to create a substantial risk of harm for any child in [that parent's] care") (citations and quotations omitted); *In re D.M.*, 58 S.W.3d 801, 812 (Tex.Ct.App.2001) ("It is inconsequential that the parental conduct considered in a termination proceeding occurred before the child's birth. Rather, courts look to what the parent did both before and after the child's birth to determine whether termination is necessary.").

¶ 19 Here, the juvenile court concluded that severance was appropriate because although Camila was not yet born at the time

5. Father asserts that such an interpretation is absurd when the statute is read in conjunction with § 8–533(B)(10), which permits termination when "the parent has had parental rights to another child terminated within the preceding two years for the same cause and is currently unable to discharge responsibilities due to the same cause." Father argues that the time limitation in § 8–533(B)(10) would "directly contradict" the lack of a time limitation in § 8–533(B)(2) when the cause was neglect or abuse. However, § 8–533(B)(2) is directed at preventing future abuse based on past conduct involving "serious physical or emotional injury." *See Linda V.*, 211 Ariz. at 80, ¶ 15, 117 P.3d at 799. As § 8–533(B)(10) merely addresses severance due to other causes, which may include non-abusive conduct, we reject Father's contention that our interpretation results in an absurdity.

of the prior abuse, a sufficient nexus existed between the prior abuse and the risk that such abuse would occur to Camila. The court reasoned that the prior abuse was not remote because Camila was born only nine months after termination of Father's rights to his other child and the circumstances surrounding the prior abuse persisted. Specifically, the court found that Mother and Father still lived together, and Father remained focused primarily on his own best interests, rather than the best interests of Camila.

¶ 20 We conclude that reasonable evidence supports the court's findings. Father's rights to Alberto, who resided in the household during the abuse relating to Gabriela, were severed by the juvenile court pursuant to § 8–533(B)(2) in March 2009. The abuse committed against Gabriela occurred on three separate occasions between March 2007 and March 2008, when she was cared for exclusively by Mother, Father, and Junior. During this time, Gabriela sustained severe physical injuries including multiple leg fractures and compression fractures of the spine as well as a subsequent intestinal injury that required a blood transfusion. At the severance hearing, doctors opined that these injuries were non-accidental and the result of trauma. Acknowledging the severity of these injuries, we agree with the juvenile court's conclusion that the prior incidents of the parents' failure to protect Gabriela were not remote in time from the abuse suffered by Gabriela.

¶ 21 Because the situation presented here involves serious physical abuse that occurred within three years prior to removal of the child from the parents' care, and within nine months of the prior termination order,[6] we need not address Father's assertion that ADES can rely on a parent's abuse in perpetuity to justify severance for another child. Nor are we compelled to speculate as to the outer limits of when ADES may no longer be able to establish the required nexus between abuse that has occurred within the meaning of § 8–533(B)(2) and the future risk of abuse to the child for whom termination of parental

rights is sought. The time that has passed between prior incidents of abuse and a termination proceeding relating to a different child is but one factor the juvenile court should evaluate in the context of each case.

¶ 22 We also find support in the record for the juvenile court's conclusion that "an adequate nexus has been established from the prior termination case to this case." The case manager testified that Father needed to demonstrate an "understanding of the past abuse of the children" as well as an "ability to protect [his] children from serious harm," but concluded that Father remained unable to protect a child in his care from harm. Although Father completed parent-aide services in this case, he had also completed parent-aide services when ADES temporarily removed Gabriela, yet the abuse resumed when Gabriela was returned to his care.

¶ 23 Moreover, Mother testified that she believed it was not a good decision to remain in a relationship with Father and that she anticipated leaving him as soon as she saved enough money to do so. She also stated that Father's children were not allowed to visit her home and that she and Father had reached an agreement prior to the hearing that if Camila was returned to her, then she would have custody, and Father would receive "supervised visitation." When Father was questioned about this arrangement, he disagreed that visitation would need to be supervised, but said he would agree to it if it was "necessary."

¶ 24 Furthermore, although Father expressed regret about lying to authorities regarding Gabriela's injuries and stated that he wanted what was best for Camila, the juvenile court was in the best position to judge the credibility of Father when concluding that he continued to be concerned primarily with his own best interests, rather than those of the child. See *Jesus M. v. Arizona Dept. of Economic Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (2002) (appellate court defers to the juvenile court's credibility determinations and findings of fact unless no reasonable

---

6. Gabriela sustained injuries between March 2007 and March 2008 and the juvenile court entered the prior termination order, as to Alberto and Gabriela, in March 2009. Camila was removed from the home in December 2009.

evidence supports them and does not reweigh the evidence).

¶ 25 Father nonetheless asserts that no nexus exists because his teenage son, Junior, pled guilty to one instance of abuse against Gabriela. Father therefore contends that Junior was probably liable for all of Gabriela's injuries, but is no longer a threat because he is not permitted in the home with Camila. However, the fact remains that although Junior pled guilty to the blunt force trauma that caused Gabriela's internal bleeding, it is still unclear who caused her serious fractures. Even assuming that Junior was responsible for all abuse committed towards Gabriela, the juvenile court in the initial severance proceeding found that Father "reasonably knew or should have known that a person was or may have been abusing or neglecting [Gabriela]." Accordingly, we find that reasonable evidence supports the decision of the juvenile court to sever Father's parental rights under § 8–533(B)(2).

## II. Best Interests of the Child

¶ 26 Father also asserts that the juvenile court erred when it found that termination was in Camila's best interests. To establish that severance of a parent's rights would be in a child's best interests, "the court must find either that the child will benefit from termination of the relationship or that the child would be harmed by continuation of the parental relationship." *James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 356, ¶ 18, 972 P.2d 684, 689 (App.1998). In making the determination, the juvenile court may consider evidence that the child is adoptable or that an existing placement is meeting the needs of the child. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19, 83 P.3d 43, 50 (App.2004) (citations omitted).

¶ 27 Father asserts that trial testimony revealed that Camila was "bonded" to Father and that there was no evidence that he posed a risk to Camila's safety. However, the CPS case manager testified that she did not believe Father had the ability to protect a child from harm. The record also reflects that Camila was adoptable and living in an out-of-home placement that, at the time of the severance hearing, was meeting all of her educational, social, emotional, and medical needs. Furthermore, Father acknowledged that Camila's needs were being met by the out-of-home placement. We therefore conclude the juvenile court did not err in finding that severance was in the child's best interests.

## CONCLUSION

¶ 28 Based on the foregoing, we affirm the juvenile court's order terminating Father's parental rights.

CONCURRING: DANIEL A. BARKER, Presiding Judge and MARGARET H. DOWNIE, Judge.