NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MANUEL M., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, M.M., A.H., S.H., *Appellees.*

No. 1 CA-JV 14-0232
FILED 4-9-2015

Appeal from the Superior Court in Maricopa County
N. JD22924
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge John C. Gemmill delivered the decision of the Court, in which Judge Donn Kessler and Chief Judge Diane M. Johnsen joined.

**G E M M I L L**, Judge:

¶1          Manuel M. (Father) appeals the juvenile court's order terminating his parent-child relationship with three children, M.M., A.H., and S.H., pursuant to Arizona Revised Statutes ("A.R.S.") § 8-533(B)(1), (2), (3), (8)(a), and (8)(b).  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          Mendoza and Yvonne H. (Mother) are the biological parents of M.M. (born 2004), A.H. (born 2005), and S.H. (born 2012).  Mother also has children with different fathers, including daughter E.H. (born 1999).  On July 3, 2012, DCS received a report alleging sexual abuse and neglect by Father against E.H.  Mother told DCS that Father no longer lived in the home, and that the family had not had contact with Father since 2008.  Further attempts by DCS to speak with Mother and the children were unsuccessful as Mother did not respond to knocks on the door or cards left in the door.  On September 17, 2012, when E.H. was 12 years old, DCS received another report alleging sexual abuse and neglect by Father against her.

¶3          Phoenix Police Detective K.A. investigated E.H.'s allegations against Father.  E.H. reported two incidents.  The first occurred one night between October 2010 and April 2011.  E.H. told the detective that she had felt someone moving her when she was sleeping and when she woke up, Father's hand was inside of her pants, "on her vagina, on her skin."  E.H. reported that during this incident, Mother woke up and confronted Father about what was going on, and that Father later apologized for what happened.  The second incident occurred about a year later when Mother was at the hospital having a baby.  E.H. reported that Father touched her breast over her shirt and told her not to tell anyone.[1]

¶4          As a part of the investigation regarding E.H.'s claims, DCS referred Father for a psychosexual evaluation in February 2013.  The clinical psychologist's report concluded that Father's behavior invalidated his test results.  The report stated that Father was "highly deceptive and

---

[1]  E.H. also admitted she had made a false allegation of physical abuse against Father in the past.  She said she made the allegation because she did not want Mother to be with Father because they fight and Father yells at the children.  Charges were not filed based on that allegation because there was no evidence to support the charges.

uncooperative with the testing process." The clinical psychologist recommended that Father attend individual therapy to assess Father for any deviant sexual arousal, interests, or preferences. The report also noted that there is a history of domestic violence in the home, with Mother once stabbing Father. The stabbing allegedly occurred after Mother learned of Father having sex with a fourteen year old girl; however, the accuracy of this claim is unknown. Father participated in individual counseling beginning in May 2013.

¶5            In August 2013, DCS filed a motion for termination of Father's parental rights regarding M.M., A.H., and S.H on the grounds of abandonment and willful abuse. DCS later amended its motion for termination to allege that the children had been in out-of-home placement for nine months. In September 2013, Father began to participate in parent-aide services and supervised visitation. In the three-month period from October 2013 to December 2013, Father missed two of thirty-two total scheduled visitations. Father's visitations and parent-aide sessions were interrupted when Father was taken into custody by immigration officials in January 2014. Father remained in custody for two-and-a-half months. After his release, Father once attempted to contact DCS by leaving a voicemail with the DCS caseworker. The caseworker was unable to understand Father's contact information to call him back. Father never contacted DCS again.

¶6            An evidentiary hearing on DCS's motion to terminate Father's parental rights was held in March and June of 2014. During the hearing, a DCS caseworker testified that the three children were in a stable placement with their maternal grandfather where they have resided for more than 15 months, the longest period of time that they have had a stable home. The caseworker also testified that the maternal grandfather is committed to adopting the children and if he were not approved, the children are otherwise adoptable.

¶7            The juvenile court found that Father willfully abused E.H. so as to cause a substantial risk of harm to the health and welfare of M.M., A.H., and S.H. *See* A.R.S. §§ 8-201(2), -533(B)(2). The court also found that the children had been in out-of-home placement for nine months and that Father had refused to remedy the circumstances causing the out-of-home placement. Because the maternal grandfather was committed to adoption and providing a safe environment for the children, the court concluded that severance was in the children's best interests. Accordingly, the court terminated Father's parental rights regarding M.M., A.H., and S.H.

**¶8** Father timely appealed the juvenile court's order. This court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. § 8-235(A).

**DISCUSSION**

**¶9** A parent's right to custody of his or her child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12, 995 P.2d 682, 684 (2000). To terminate the parent-child relationship, the juvenile court "must find, by clear and convincing evidence, at least one of the statutory grounds set out in [A.R.S.] section 8-533, and also that termination is in the best interest of the child." *Id.* at 249, ¶ 12, 995 P.2d at 685. As the trier of fact, the juvenile court is in "the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings." *In re Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546, 744 P.2d 455, 458 (App. 1987). This court will uphold the juvenile court's termination of parental rights "absent an abuse of discretion or unless the court's findings of fact were clearly erroneous." *Maricopa Cnty. Juv. Action No. JV-132905*, 186 Ariz. 607, 609, 925 P.2d 748, 750 (App. 1996).

I. Severance Based on Willful Abuse

**¶10** Under A.R.S. § 8-533(B)(2), the juvenile court may sever a parent's rights if "the parent has neglected or willfully abused a child. This abuse includes serious physical or emotional injury[.]" This court has previously applied § 8-533(B)(2) to terminate parental rights to a child who has not been abused when there is proof that the parent abused another child. *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 79, ¶ 14, 117 P.3d 795, 798 (App. 2005). The definition of "abuse" under § 8-201(2)(a) includes "[i]nflicting or allowing sexual abuse pursuant to § 13-1404, sexual conduct with a minor pursuant to § 13-1405," and "molestation of a child pursuant to § 13-1410." Father argues there was insufficient evidence to support the juvenile court's findings that DCS had proven the abuse ground. We disagree and conclude that reasonable evidence in the record supports the juvenile court's finding that Father willfully abused E.H.

**¶11** The police report admitted at trial contains E.H.'s account of the abuse and molestation. *See* A.R.S. § 8-237 ("[O]ut of court statements . . . of a minor regarding acts of abuse or neglect perpetrated on him are admissible for all purposes" in a dependency hearing); *see also* Ariz. R.P.

Juv. Ct. 45(E). Regarding the first incident, E.H. stated that Father began touching her in her "private part" while she was sleeping. Mother woke up and confronted Father about what was going on but did not want to believe that Father had been touching E.H. In the second incident detailed in the police report, E.H. said that Father told her he had seen her changing clothes; he then touched one of her breasts on the outside of her clothing. In the police report, E.H. stated Mother did not originally believe E.H.'s claims that Father had been touching her. According to E.H., Father lied when confronted by Mother and stated that E.H. took off her clothes and propositioned Father for sex.

¶12        In addition to E.H.'s report, the juvenile court found that other evidence and testimony at trial also supported a finding that Father abused E.H. This included testimony from the investigating officer and a child safety specialist with DCS, a psychological evaluation of Father, medical records of E.H., and a police report. Father's psychological evaluation concluded that Father has cognitive distortions related to the incident in which E.H. allegedly took her clothes off in front of him. It also stated that Father appears to have more than a moderate degree of risk of sexual offending. The evaluation recommended that Father be referred to an individual therapist skilled in the treatment of sexual offending behavior, with a focus on assessing Father for any deviant sexual arousal or interests.

¶13        The juvenile court found E.H.'s report that Father sexually abused her on "multiple occasions" to be credible and that it supported a finding of willful abuse. The results of the psychological evaluation also support a finding that Father posed a continuing risk of such abuse. We conclude this evidence is sufficient to support the court's finding that willful abuse occurred. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12, 53 P.3d 203, 207 (App. 2002) (explaining that this court will not reweigh the evidence on appeal but instead defers to the trial court's findings unless they are clearly erroneous.) Additionally, we disagree with Father's argument that because there was no evidence of serious physical harm to E.H., the juvenile court therefore shifted the burden of proof to Father. The evidence permitted the juvenile court to find willful abuse by Father of E.H. and the burden of proof remained on DCS.

II.    Constitutional Nexus

¶14        Under A.R.S. § 8-533(B)(2), a finding of substantial abuse as to one child permits termination of parental rights to a different child only if

there is a "constitutional nexus" between the prior incident and the risk of future abuse. *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 285–86, ¶ 16, 257 P.3d 1162, 1165–66 (App. 2011). In *Mario G.*, for example, this court upheld the juvenile court's order terminating the father's parental rights to his biological son and daughter based on the father's abuse of mother's child from a prior relationship. *Id.* at 283, ¶ 2, 287, ¶ 20, 257 P.3d at 1163, 1167. This court found that father's parental rights to his biological daughter could be terminated even though she was born after the abuse of a different child. A sufficient nexus existed between the past and potential future abuse because the father and mother still lived together, the injuries were severe, the injuries occurred on three separate occasions over a one-year period, and the physical abuse occurred within three years prior to removal of the child from the father's care. *Id.* at 286–87, ¶¶ 19–20, 257 P.3d at 1166–67.

¶15 Under the standard set forth in *Mario G.*, we agree with the juvenile court that a sufficient constitutional nexus is present in this case. Sexual molestation is a severe injury and the two incidents involving E.H. occurred over a one-year period when E.H. was 12 years old. The juvenile court found that Father treated E.H. as his own child and, because of the incidents involving E.H., all of Father's biological children, now 10, 9, and 3 years old, are at an ongoing risk of abuse. The evidence of abuse to an unrelated child in this case is sufficient to support the termination of parental rights to Father's biological children.[2]

III.    Best Interests Findings

¶16 Finally, Father contends that the juvenile court erred in finding that severance was in the best interests of the children, arguing that in so doing, it failed to consider the length and strength of his existing relationship with the children. In determining whether termination is in the children's best interests, the juvenile court should consider whether an adoptive placement that meets the needs of the children is immediately

---

[2] Because we find that the court did not err in terminating Father's rights on the basis of willful abuse, we need not reach the question of whether the court was correct in finding that Father willfully refused to remedy the circumstances leading to out-of-home placement. *See Michael J. v. Ariz. Dept. of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27, 995 P.2d 682, 687 (2000) (explaining that if one ground for severance is proven by clear and convincing evidence, "we need not consider whether the trial court's findings justified severance on the other grounds" considered by the court).

available and whether the children are adoptable. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30, 231 P.3d 377, 383 (App. 2010). The Department must also prove how the children would either benefit from severance or be harmed if the parental relationship was continued. *Id.*

¶17 We disagree with Father's argument. The court specifically found the children were adoptable and that their maternal grandfather was committed to adoption. It also found that the maternal grandfather was providing a safe and stable home for the children. Even if the maternal grandfather is not able to adopt, as Father contends may be the case, the court further noted that the children were otherwise adoptable. The court also ruled that keeping Father's parental rights intact would pose a risk of harm to the children because of Father's prolonged and repeated abuse of E.H. Accordingly, sufficient evidence supports the juvenile court's finding that termination of Father's parental rights was in the best interests of the children. The court did not err.

## CONCLUSION

¶18 For these reasons, we affirm the severance of Father's parental rights regarding M.M., A.H., and S.H.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama