NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARY C., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.S., *Appellees.*

No. 1 CA-JV 17-0149
FILED 10-26-2017

Appeal from the Superior Court in Maricopa County
No. JD16331
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Thomas C. Kleinschmidt[1] delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Peter B. Swann joined.

---

**K L E I N S C H M I D T**, Judge:

¶1          Mary C. (Mother) challenges the superior court's order terminating her parental rights to her biological son J.S. based on mental-illness and 15-months' time-in-care. She argues the court erred in finding (1) the Arizona Department of Economic Security (ADES) made diligent efforts to provide her with appropriate reunification services, and (2) termination is in the best interests of the child. Because Mother has shown no error, the order is affirmed.

## FACTS[2] AND PROCEDURAL HISTORY

¶2          J.S. was born in November 2009. In early 2015, Mother, Father, and five-year-old J.S. were homeless.[3] The Department of Child Safety (DCS) received reports that the family was staying in a drug house, Father was abusing substances, and there was domestic violence between Mother and Father. DCS interviewed Mother who admitted the family was homeless and Father was selling drugs to earn money. She denied either parent was abusing substances, but DCS asked her to submit to a urinalysis test. She did not comply.

¶3          DCS took custody of J.S. and filed a petition alleging he was dependent as to Mother because she was unable to meet his basic needs,

---

[1]     The Honorable Thomas C. Kleinschmidt, retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3, of the Arizona Constitution.

[2]     This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207, ¶ 2 (App. 2008).

[3]     Father's parental rights were terminated and he is not a party to this appeal.

had unaddressed mental health and cognitive concerns, and DCS could not rule out substance abuse at that time. In March 2015, the court found J.S. dependent and set the case plan as family reunification.[4] Mother and Father moved to Prescott shortly after the proceeding.

**¶4**        In April 2015, Mother completed rule-out hair follicle testing and urinalysis tests. When these tests returned negative, DCS did not have further substance-abuse concerns with Mother. That summer, DCS referred Mother for a psychological evaluation which she did not complete. In September 2015, Mother began parent-aide services. Mother participated in this service without Father because of Father's prior aggressive behavior. At her mid-point evaluation in December, Mother denied neglecting J.S. and denied Father presented any safety concerns. Mother unsuccessfully closed out of parent-aide in April 2016 because she was not open to direction, disagreed with the parent-aide, did not complete the homework, and failed to meet the parenting goals which included gaining an understanding of domestic violence and substance abuse. DCS did not provide a second parent-aide referral because the child was placed out of state. Further, DCS does not typically provide second parent-aide referrals absent special circumstances.

**¶5**        DCS provided Mother a second psychological evaluation referral which she completed in January 2016. Mother denied Father's continued substance abuse despite his positive drug tests, denied neglecting J.S., and had great difficulty answering basic child care questions. Mother was diagnosed with a mild to moderate intellectual disability and a rule-out diagnosis of dependent personality disorder. The evaluator noted Mother would likely be incapable of raising a child independently due to her mental deficiency.

**¶6**        Mother and Father participated in couples counseling for several months until they were closed out unsuccessfully due to Father's anger issues. Mother told DCS she would not continue counseling without Father. DCS provided her information on how to access services in Yavapai County and she eventually self-referred to counseling in October 2016.

**¶7**        J.S. was moved to an out-of-state placement in June 2016. In July 2016, the court changed the case plan to severance and adoption, and in August, DCS moved to terminate Mother's parental rights on the mental-illness and fifteen-months out-of-home placement grounds. J.S.

---

[4]        Mother was appointed a guardian ad litem during the juvenile court proceedings.

exhibited aggressive behaviors and was moved to a foster care placement in Arizona.

¶8 The juvenile court held a contested severance hearing in March 2017. Mother admitted that her relationship with Father was emotionally abusive and testified she separated from him in September 2016. She denied, however, allegations of neglect, domestic violence, and Father's substance abuse. The juvenile court terminated Mother's parental rights on the grounds alleged and found termination was in J.S.'s best interests.

¶9 This court has jurisdiction over Mother's timey appeal pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-2101(A) and 12-120.21(A), and Arizona Rules of Procedure for the Juvenile Court 103 and 104.

## DISCUSSION

¶10 As applicable here, to terminate parental rights, a court must find proven by clear and convincing evidence at least one statutory ground articulated in A.R.S. § 8-533(B), and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

### I. DCS Made Diligent Efforts to Reunify the Family.

¶11 Mother's only challenge to the juvenile court's findings regarding the statutory grounds of mental illness and time-in-care is that DCS did not make a "diligent effort to provide appropriate reunification services" after she separated from Father. A.R.S. § 8-533(B)(8). ADES argues Mother waived this argument because she did not claim services were inadequate until the termination hearing. However, if "at a termination hearing, a parent can dispute evidence that ADES claims shows a diligent effort to provide appropriate reunification services, including by testifying about the services actually provided," then the argument is properly raised for appeal. *Shawanee S. v. Ariz. Dept. of Econ. Sec.*, 234 Ariz. 174, 178, ¶ 14 (App. 2014).

**¶12**         The State is constitutionally obligated to make reasonable efforts to preserve the family as a necessary predicate to severing parental rights. *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 32 (App. 1999).   DCS must provide a parent "with the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). However, futile efforts are not required and DCS "is not required to provide every conceivable service or to ensure that a parent participates in each service." *Id.* Nor is the court required to "leav[e] the window of opportunity for remediation open indefinitely." *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

**¶13**         Mother argues DCS did not make diligent efforts to provide her with reunification services after she separated from Father, primarily asserting she was not provided with counseling or a second parent-aide referral. We disagree.

**¶14**         The record indicates Mother participated in some individual and joint counseling with Father. After the service closed, she was offered an individual referral but refused, stating "there was no need for [counseling] and the entire case was a conspiracy and she should have her child back." Nevertheless, DCS provided her with individual counseling options in Yavapai County, including instructions on how to contact the providers.

**¶15**         Mother began participating in self-referred counseling after she reportedly left Father in September 2016. Thus, DCS was not required to duplicate this service for her. *See Pima Cty. Severance Action No. S-2397*, 161 Ariz. 574, 577 (App. 1989) (DCS is not required to provide services that were already offered).

**¶16**         Mother argues DCS should have provided a second parent-aide referral after she left Father. However, the record indicates parent-aide referrals are only offered a second time under unusual circumstances. Additionally, J.S. was in an out-of-state placement until approximately three months before the termination proceeding. Thus, a second parent-aide referral would have been futile.

**¶17**         The record shows DCS provided Mother with numerous services including counseling, parent aide, case aide, drug testing, and transportation. Mother did not successfully complete many services and only showed a willingness to engage after the case plan had changed to

termination. The record supports the court's determination that DCS made reasonable efforts to provide Mother reunification services.

## II. Mother Has Shown No Error In The Superior Court's Best Interests Finding.

¶18 Mother argues the superior court erred when it found termination was in J.S.'s best interests. To support a best interests finding, "the court must find either that the child will benefit from termination of the relationship or that the child would be harmed by continuation of the parental relationship." *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 286, ¶ 26 (App. 2011).

¶19 The evidence in this case supports both alternatives. "One factor the court may properly consider in favor of severance is the immediate availability of an adoptive placement. Another is whether an existing placement is meeting the needs of the child." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998) (citation omitted). The superior court properly found that termination would benefit J.S. because there is a current adoption plan in place with a placement that "is able to meet [all of the child's] needs." Additionally, J.S. is "considered adoptable if the placement were not able to finalize his adoption for any reason."

¶20 Although Mother has taken some positive steps toward being able to care for J.S., including obtaining housing and social security, it is unclear how long it would take for her to be in a position where she could raise J.S. on her own. The superior court noted "there is a detriment in not terminating the Mother's parental rights as it would result in the child lingering in the foster care system for an indeterminate period as Father's rights have been terminated and Mother is not able to care for the child now or in the future." The superior court properly could conclude that affording Mother an indeterminate amount of additional time to work on her mental health issues was not in J.S.'s best interests. *See JS-501568*, 177 Ariz. at 577.

¶21 Mother argues she and J.S. are strongly bonded and he has expressed a desire to return to her care. However,

> [t]he existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests. Even in the face of such a bond, the juvenile court is required to evaluate the totality of

circumstances and determine whether severance is in the best interests of the children.

*Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99, ¶ 12 (App. 2016) (citation omitted). Here, the superior court considered the totality of the circumstances in finding that termination was in J.S.'s best interests; reasonable evidence in the record supports that finding.

## CONCLUSION

**¶22** The superior court's order terminating the parental rights of Mother to J.S. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA