NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LISA W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, K.W., *Appellees*.

No. 1 CA-JV 17-0299
FILED 12-14-2017

Appeal from the Superior Court in Maricopa County
No. JD 31079
The Honorable John R. Ditsworth, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Patricia A. Orozco[1] joined.

---

**B R O W N**, Judge:

¶1         Lisa W. ("Mother") appeals the termination of her parental rights to her child, K.W., who was born in 2008.[2] For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2         In August 2015, the Department of Child Safety ("DCS") took custody of the child after receiving multiple reports of Mother's substance abuse, domestic violence, and neglect. DCS filed a dependency petition alleging the child was dependent due to substance abuse, physical abuse, and neglect.

¶3         Before the superior court ruled on the dependency petition, DCS offered reunification services to Mother. She was referred to TASC for random urinalysis testing, and to Terros for substance abuse treatment. Mother also was assigned a case aide to facilitate visits and was informed she could have a parent aide once she demonstrated 30 days of sobriety. DCS provided Mother transportation services and identified the behavioral changes she needed to make to reunify with the child. As relevant here, the changes revolved around Mother maintaining sobriety, understanding how substance abuse impacted the child, recognizing how unhealthy relationships and domestic abuse can traumatize a child, and implementing a safety plan to address domestic violence.

¶4         In January 2016, the superior court found the child dependent and approved a case plan for family reunification. In furtherance of the

---

[1]     The Honorable Patricia A. Orozco, retired Judge of the Arizona Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]     The child's father is not a party to this appeal.

case plan, DCS continued with the services previously offered to Mother, together with counseling and a psychological evaluation.

¶5        While the child has been in DCS's custody, Mother was in Colorado from September through November 2015 and she returned to Arizona in December.  In October 2016, Mother moved to Colorado, but returned to Arizona in February 2017 to attend court proceedings and visit the child, intending to return to Colorado.  DCS referred Mother to urinalysis testing in Colorado.  She was directed to self-refer to counseling and substance abuse assistance.

¶6        Mother did not complete the services DCS provided.  She consistently missed the random urinalysis tests and, for that reason, was closed out of TASC eight times.  Of the urinalysis tests Mother took, almost one-quarter of the samples tested positive for alcohol.  Because Mother did not demonstrate or report 30 continuous days of sobriety, she was never provided a parent aide referral.  Nor did Mother complete substance abuse treatment, despite being referred to Terros several times.  Mother attended a substance abuse clinic in Colorado where she received substance abuse treatment, group and individual counseling.  Although DCS confirmed by phone that Mother was participating in these services, DCS requested treatment records from the Colorado facility but never received them.

¶7        Mother participated in some visits with the child when she was in Arizona, but did not self-refer to parenting classes as requested by DCS.  DCS referred Mother to domestic violence counseling in April 2016, but the service was closed out after Mother failed to engage in the services. Mother testified that she participated in domestic violence classes in Colorado, but DCS never received confirmation of such participation.  DCS also referred Mother to a psychological evaluation; she was notified of the appointment and a taxi was provided to Mother, per her request.  Mother was not present when the taxi arrived.  The appointment was rescheduled but Mother did not attend.  When Mother asked DCS to schedule another appointment, DCS declined.

¶8        DCS filed a motion for termination of Mother's parental rights under Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(3) (chronic substance abuse), 8-533(B)(8)(a) (nine months' time in care), and 8-533(B)(8)(c) (fifteen months' time in care).  Following a contested hearing, the superior court granted the motion on each of the three statutory grounds and determined that termination was in the child's best interests. This timely appeal followed.

**DISCUSSION**

**¶9** To terminate parental rights, the superior court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination enumerated in A.R.S. § 8-533(B), and must also find by a preponderance of the evidence that termination is in the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). "[W]e view the evidence and reasonable inferences . . . in the light most favorable to sustaining the court's decision." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). We will affirm the termination order if it is supported by reasonable evidence. *Id.*

**¶10** To prevail on its motion to terminate Mother's parental rights pursuant to A.R.S. § 8-533(B)(8)(c), DCS was required to show that the child was in an out-of-home placement for at least fifteen months, she was "unable to remedy the circumstances that cause[d] the child to be in an out-of-home placement," and a "substantial likelihood" exists that she "will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c). DCS is also required to show it "made a diligent effort to provide appropriate reunification services" before termination of parental rights. A.R.S. § 8-533(B); *see also Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14 (App. 2011) ("The juvenile court is to consider the availability of reunification services to the parent and his or her participation in those services, and must find that ADES made a diligent effort to provide such services.").

**¶11** Mother argues the superior court erred in finding DCS made diligent efforts to provide her rehabilitative services and that termination is in the child's best interests. As an initial matter, we note Mother waited until the severance hearing to alert the court as to adequacy of the services DCS had offered throughout the dependency proceeding. Nonetheless, we decline to find waiver on this record but urge parents and their counsel to raise such concerns much earlier in the process. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18 (App. 2014) (explaining that if the mother believed that services were inadequate, "it was incumbent on her to promptly bring those concerns to the attention of the juvenile court, thereby giving that court a reasonable opportunity to address the matter and ensure that [DCS] was in compliance with its obligation to provide appropriate reunification services as ordered by that court").

**¶12** Mother asserts that DCS should have offered her more services when she was in Colorado, that DCS never notified her to call into

4

TASC when she returned to Arizona, and that DCS did not provide sufficient visitation services when she returned. Contrary to Mother's assertions, we conclude that reasonable evidence supports the superior court's finding that DCS made diligent efforts to provide appropriate reunification services. The services provided to Mother, as outlined above, were explained by the DCS case manager at the severance hearing, are well-documented in the numerous exhibits admitted at the hearing, and were summarized in the court's detailed severance ruling.

¶13　　　　Mother also argues the superior court erred by terminating her parental rights pursuant to A.R.S. § 8-533(B)(8)(c) because DCS failed to prove that Mother is unable to remedy the circumstances that caused the child to be in an out-of-home placement and that Mother is incapable of exercising proper and effective parental care and control in the near future. The court found that Mother has been unable to remedy the circumstances that caused the out-of-home placement because she was still drinking several months before the severance hearing and remained in a relationship involving domestic violence. The court believed it would take over one year to rectify these problems which she had "done nothing to address."

¶14　　　　The record supports the court's findings. Mother participated sporadically in substance abuse testing and treatment throughout the case. Notably, she tested positive for alcohol throughout the case, relapsed several months before trial, and failed to complete the services offered in Arizona or provide proof of completion for services in which she participated in Colorado. The DCS case manager testified it was unlikely Mother would be capable of exercising parental control in the future because she did not address her issues with substance abuse and because she remained in a relationship involving domestic violence. Thus, reasonable evidence supports the court's finding that termination was warranted based on fifteen months' time in care.[3]

¶15　　　　Finally, Mother asserts the superior court erred by concluding that termination of parental rights was in the child's best interests. Termination is in the child's best interests if the child will "derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004). "In making the determination, the juvenile court may consider evidence that the child is adoptable or that an existing placement is meeting

---

[3]　　　　Because we find the evidence supports the superior court's order based on fifteen months' time in care, we need not address the other grounds for termination.

the needs of the child." *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288, ¶ 26 (App. 2011). Here, the court found that the child is in an adoptive home, the placement meets the child's needs, and the severance provides her with permanency and an environment free of alcoholism and domestic violence.

**¶16** The juvenile court's ruling is supported by the record. The case manager testified the child is adoptable and an adoptive home has been identified. Moreover, the case manager explained termination would provide the child permanency, safety, and she would not need to witness domestic violence or alcoholism. Therefore, the court did not err in finding termination of Mother's rights is in the child's best interests.

## CONCLUSION

**¶17** For the foregoing, we affirm the superior court's termination of Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA

6