NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ELIZABETH V., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.V., M.V., *Appellees*.

No. 1 CA-JV 17-0355

FILED 1-18-2018

Appeal from the Superior Court in Maricopa County
No. JD 31477
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Jon W. Thompson joined.

---

**P E R K I N S**, Judge:

¶1        Elizabeth V. ("Mother") appeals the superior court's order terminating her parental rights. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Mother and Michael V. ("Father")[1] are the biological parents of A.V. (born in 2001) and M.V. (born in 2006) (collectively the "Children"). They are also the biological parents of two older children who are now adults.

¶3        The Department of Child Safety ("DCS") has received anonymous reports and subsequently investigated Mother 14 times since 2007 for neglect, substance abuse, domestic violence, and sexual abuse. Mother and Father divorced in 2009. In 2013, Mother sought child support from Father, and filed a police report alleging Father had sexually molested at least two of the girls. Father has since been exonerated. Mother subsequently married Scott S. in 2014. In 2015, the anonymous reports to DCS began to increase in frequency. DCS removed the Children due to allegations of domestic violence and substance abuse in May 2015. In October of that year, A.V. disclosed to a DCS worker Scott S. had sexually molested her. DCS then required Scott S. be absent from the home for the Children's visits during the remainder of the dependency. Mother still lived in the house with Scott S., and, on the days when he refused to leave, visits were conducted in public places. During the following holiday season, Mother drove the Children to visit Scott S. so he could give them a Christmas present. In February 2016, DCS dismissed the dependency, and reunified Mother with the Children.

¶4        Less than four months later, DCS received a Hotline report Mother was "physically abusing and neglecting" the Children. Upon

---

[1] The superior court also terminated Father's rights; however, he is not a party to this appeal.

investigation, DCS discovered A.V. had scars on her arm from cutting herself and frequent thoughts of suicide and M.V. had red welts on her neck. DCS removed the Children from Mother's custody with allegations of substance abuse, physical abuse, neglect, and a prior dependency. DCS then placed the Children with a foster family, which had a daughter who was previously friends with A.V. Mother filed for visitation two separate times, and the court denied both motions. Mother did not begin dialectical behavioral therapy ("DBT") until after the first motion was denied.

¶5        In November 2016, DCS moved to terminate Mother's parental rights to the Children based on willful abuse and prior out-of-home placement within eighteen months. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 8-533(B)(2), (11) (2014).[2] After a contested termination hearing, the superior court terminated Mother's parental rights with respect *to* both grounds alleged in the petition and found severance was in the Children's best interests. Mother appealed the termination. We have jurisdiction pursuant to A.R.S. §§ 8-235(A) and 12-120.21(A)(1) (2017).

## DISCUSSION

¶6        Custody of one's children is a fundamental, but not absolute, right. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). The superior court may terminate a parent's rights upon clear and convincing evidence of one of the statutory grounds in A.R.S. § 8–533(B), and upon a preponderance of the evidence termination is in the best interests of the child. *Id.* at 248–49, ¶ 12. We review the superior court's termination order for an abuse of discretion and will affirm the order "unless its factual findings are clearly erroneous, that is, unless there is no reasonable evidence to support them." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998).

¶7        Parental rights may be terminated when "the parent has neglected or wilfully abused a child." A.R.S. § 8–533(B)(2). Abuse "*includes* serious physical or emotional injury or situations in which the parent knew or reasonably should have known that a person was abusing or neglecting a child." *Id.* (emphasis added); *see also E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 59, ¶¶ 12–15 (App. 2015) (citing § 8-533(B)(2)) (the word "includes" enlarges the meaning, and evidence of serious physical or emotional injury is not required under the statute); *see also* A.R.S. § 8-201(2) (2017) ("'Abuse' means the infliction or allowing of physical injury . . . or the infliction of or

---

[2] Absent material revision after the relevant date, we cite a statute's current version.

allowing another person to cause serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior and which emotional damage is diagnosed by a medical doctor or psychologist").

**¶8** Here, reasonable evidence supports the court's order terminating Mother's parental rights to the Children. The court found "Mother physically and emotionally abused the children. The children have both reported that Mother's abuse was ongoing and included both physical and emotional abuse." *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (the superior court is in the best position to "weigh the evidence, observe the parties, [and] judge the credibility of witnesses"). Both Children have been diagnosed with Post-Traumatic Stress Disorder ("PTSD") and are participating in trauma counseling. In addition, while under Mother's care, A.V. was self-harming and preoccupied with thoughts of suicide. When A.V. told Mother about the suicidal ideation, Mother responded dismissively she, too, was suicidal.

**¶9** In September 2016, a DCS-contracted therapist evaluated her meetings with Mother and concluded the "primary concerns" were Mother's emotional instability, her insistence on minimizing the Children's experiences, and her insistence the Children should be forced to see her. Since then, Mother has sought out DBT therapy and completed services. Notwithstanding those efforts, Mother "continues to minimize any of her abusive behaviors" that led to the Children's trauma. "When questioned about her DBT therapy and her ability to role play by placing herself in the position of the children, . . . Mother acknowledged she did not address her role as the abuser." Near the end of trial, Mother believed her therapist had testified she was ready and able to parent at the time of the termination hearing; when in fact, his testimony was, while she was benefiting from therapy, he did not anticipate she would be complete with the process for another five to six months. The superior court found Mother was not able to understand the nature of her actions and "the circumstances surrounding Mother's abuse of the children ha[d] persisted." Accordingly, we find reasonable evidence supports the court's decision to terminate Mother's parental rights to the Children under A.R.S. § 8–533(B)(2).[3]

---

[3] Because we find the evidence supports termination of Mother's parental rights on the grounds she failed to protect the Children from abuse, we need not address her argument reasonable evidence did not support termination of her rights pursuant to A.R.S. § 8-533(B)(11). *Jesus M.*, 203 Ariz. at 280, ¶ 3

**¶10** Mother also contends the superior court erred by finding severance was in the Children's best interests. "Whether severance is in the child's best interests is a question of fact for the juvenile court to determine," and we draw all reasonable inferences in favor of the superior court's findings. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002). To prove best interests, DCS must show the child would either benefit from severance or be harmed by a continuation of the parental relationship. *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288, ¶ 26 (App. 2011). A child benefits from severance when the child is adoptable and severance would free a child for adoption. *In re Maricopa Cty. Juv. Action No. JS–501904*, 180 Ariz. 348, 352 (App. 1994). Additionally, DCS can establish severance is in a child's best interests by presenting evidence showing an existing placement is meeting the needs of the child. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004).

**¶11** Here, the superior court found, by a preponderance of the evidence, severance was in the Children's best interests. At trial, the DCS caseworker testified the Children were adoptable, their current placement was willing to adopt them, and the placement was meeting all their needs. In addition, the children's emotional trauma has abated with the stability of the foster family and trauma counseling. The caseworker also testified there was a risk of harm to A.V. if Mother's rights were not severed because Mother had not noticed A.V.'s cutting or scars while under her care and, likely, would not notice if it were to happen again. A certified family trauma therapist testified, as a best-case scenario, Mother would not be able to sit in the same room as the Children for another six months without causing them additional emotional harm. Finally, both Children have expressed through hand-written letters they would continue to suffer emotional trauma if they were returned to Mother's care, and they want to be adopted by their foster family where they feel safe and protected. Reasonable evidence supports the court's finding the termination of Mother's parental rights was in the Children's best interests.

## CONCLUSION

("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.").

**¶12** For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights to the Children.



AMY M. WOOD • Clerk of the Court
ØGOÖ‍pjl