NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CYNTHIA G., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.G., M.G., *Appellees.*

No. 1 CA-JV 16-0081
FILED 10-13-2016

Appeal from the Superior Court in Maricopa County
No. JD527322
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Daniel R. Huff
*Counsel for Appellee*

David W. Bell, Higley
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Peter B. Swann and Judge Patricia A. Orozco joined.

**G O U L D**, Judge:

¶1            Cynthia G. ("Mother") appeals from the juvenile court's order terminating her parental rights to her children.  She argues insufficient evidence supports the statutory grounds for severance and that the severance was not in the children's best interests.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2            On January 9, 2014, Mother brought her baby, M.G., to the pediatrician for what she claimed were gastrointestinal problems.  While she was waiting to see the doctor, she observed that M.G. experienced pain when she moved his right arm; she mentioned this to the pediatrician and was directed to get x-rays of his arm.  X-rays showed M.G. had a condylar fracture of his right humerus and a metaphyseal fracture of his wrist.  A full skeletal scan also showed he had healing posterior fractures of the 11th rib on the right and the 5th, 6th, and 10th ribs on the left.  The state of healing of the fractures indicated they were 10-14 days old.  Additionally, M.G. had a fresh posterior rib fracture, less than 10-14 days old, of his left 7th rib.

¶3            Mother explained that M.G.'s arm could have been fractured when Father[1] lifted him up by his arms.  She speculated the rib fractures could have occurred when M.G. fell off the couch in late December.  However, neither of these explanations would have created the amount of force required to cause the fractures.  Upon discovering the severity and nature of M.G.'s fractures, the Department of Child Safety ("DCS") became involved and took both M.G. and his brother A.G. into care.  A.G. was about one and-a-half years old at the time, and M.G. was two-and-a-half-months old.

¶4            During the two-year dependency, Mother and Father complied with the services provided by DCS.  However, they failed to make the necessary behavioral changes in conjunction with the services.  Specifically, while both parents acknowledged they were the sole caretakers of M.G, neither of them offered any plausible explanation for the cause of his injuries.

¶5            In May 2015, DCS moved to terminate both Mother's and Father's parental rights.  The Department moved for severance on the

---

[1]      Father's parental rights to both children were also terminated at the severance trial; however, Father is not a party to this appeal.

grounds of willful abuse pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(2) and out-of-home placement for 15 months or longer pursuant to A.R.S. § 8-533(B)(8)(c).

**¶6** The court held a contested severance hearing as to both parents. At the severance hearing, DCS presented evidence of the fractures to M.G.'s arm and ribs. Medical testimony showed these injuries were the result of non-accidental trauma, or abuse. Additionally, DCS presented testimony that, given the injuries to M.G., A.G., a vulnerable child who was diagnosed with Down Syndrome and Hirschprung's Disease from a young age, was also at risk of abuse in the home. A DCS supervisor testified the children were adoptable and severance was in their best interests because they needed permanency.

**¶7** The court terminated Mother's and Father's parental rights to both children, and Mother timely appealed.

## DISCUSSION

I.    Willful Abuse

**¶8** Mother challenges the sufficiency of the evidence regarding willful abuse. Mother argues that because the evidence was inconclusive as to how M.G.'s injuries occurred, DCS failed to show by clear and convincing evidence that Mother had abused or neglected M.G. under section 8-533(B)(2).

**¶9** "[W]e will affirm a termination order that is supported by reasonable evidence." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). As the trier of fact, the juvenile court "'is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts.'" *Id.* (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, ¶ 4 (App. 2004)). Thus, we "view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision." *Jordan C.*, 223 Ariz. at 93, ¶ 18. The juvenile court "retains great discretion in weighing and balancing the interests of the child, parent, and state"; and in "the resolution of conflicts in the evidence." *Jennifer S. v. Dep't of Child Safety*, 1 CA-JV 15-0333, 2016 WL 4193917, at *4, ¶ 16 (Ariz. App. Aug. 9, 2016). We will only reverse a termination order for insufficient evidence if, "as a matter of law, no reasonable fact-finder could have found the evidence satisfied the applicable burden of proof." *Jade K. v. Loraine K.*, 2 CA-JV 2016-0067, 2016 WL 4978349, at *2, ¶ 6 (Ariz. App. Sept. 16, 2016).

¶10        "To justify termination of the parent-child relationship, the trial court must find, by clear and convincing evidence, at least one of the statutory grounds set out in section 8-533, and also that termination is in the best interest of the child." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).  A.R.S. § 8-533(B)(2) "justifies termination if 'a child' is abused or neglected by either the parent or another person and the parent knew or should have known about the abuse or neglect." *Linda V. v. Ariz. Dept. of Econ. Sec.*, 211 Ariz. 76, 78, ¶ 9 (App. 2005).  Under subsection (B)(2) a parent who "abuse[s] or neglect[s] [her child], or who permit[s] another person to abuse or neglect [her child], can have [her] parental rights to [any of her] other children terminated even though there is no evidence that the other children were abused or neglected." *Id.* at 79, ¶ 14.  To prove the statutory ground, "[c]ircumstantial evidence has the same probative value as direct evidence." *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 54, ¶ 21 (App. 2009).

¶11        Clear and convincing evidence supports the juvenile court's findings that Mother willfully abused M.G. or reasonably should have known M.G. was being abused by Father.  At the severance trial, both the treating physician and the pediatric nurse practitioner testified that the nature of M.G.'s fractures indicated they were caused by multiple instances of severe non-accidental trauma.  The parents' proffered explanations for M.G.'s injuries did not explain the fractures and were refuted by the medical testimony.  M.G.'s treating physician testified the fracture to M.G.'s right arm was an exceedingly unusual fracture in a two-and-a-half-month old, and that it could not have been caused by the child's movement or by being lifted by his arms.  The doctor opined that the arm fracture, coupled with the presence of both healed and acute rib fractures, also made accidental trauma an unlikely cause of the injuries.

¶12        Circumstantial evidence establishes that Mother either was the abuser or Mother knew Father was the abuser and Mother failed to protect M.G. from Father.  Throughout the dependency and severance proceedings Mother continued to deny that either she or Father was responsible for M.G.'s fractures.  However, both parents maintained that they were the only caregivers for the children, and that neither of the children had been left alone with another individual other than for medical procedures.  As the sole caregivers of the children, Mother and Father should be able to identify the abuser; yet, Mother continues to deny that she or Father did anything to hurt M.G.

**¶13** Accordingly, DCS presented sufficient evidence on which the court could find that Mother knew or should have known M.G. was being abused.

**¶14** The record also shows there was sufficient evidence to terminate Mother's rights to A.G. We note that Mother does not specifically challenge the termination of her parental rights to A.G. Nonetheless, our review of the record shows that having found severance was justified as to M.G. on the grounds of willful abuse, the juvenile court was warranted in severing Mother's rights to A.G. Specifically, the record shows "a nexus between the abuse or neglect committed on [M.G.] . . . and the risk that such abuse would occur to [A.G.]" a vulnerable, special needs toddler. *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 285, ¶ 15 (App. 2011).[2]

II. Best Interests

**¶15** Mother also challenges the court's best interests finding. In a best interests inquiry, "the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016) (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 35 (2005)).

**¶16** DCS must show by a preponderance of the evidence that severance is in the children's best interests. *Kent K.*, 210 Ariz. at 288, ¶ 41. DCS can do so by presenting credible evidence "demonstrating how the child would benefit from a severance or be harmed by the continuation of the relationship." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 19 (App. 2004). The Department could also show the children are adoptable, or that the current placement is meeting the children's needs. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998); *Maricopa Cny. Juv. Act. No. JS-501904*, 280 Ariz. 348, 352 (App. 1994).

**¶17** Here, the DCS supervisor testified that severance was in the children's best interests because the children would not be safe if they remained in Mother's care. The record supports the court's finding that the children are both very young and vulnerable. The record also supports the court's finding that because Mother and Father had still not addressed the

---

[2] Having found severance was justified on the grounds of willful abuse, we need not consider whether the juvenile court's findings justified severance on the ground of 15-months' time in care. *Michael J.*, 196 Ariz. at 251, ¶ 27.

issues of M.G.'s abuse, the children would be at risk of abuse if returned to the home. The court further found the children are adoptable and severance would afford them the opportunity to have a permanent, safe and loving home. We find no error.

**CONCLUSION**

**¶18** For the reasons above, we affirm the termination of Mother's parental rights to A.G. and M.G.

