NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

KRISTI S., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.T., *Appellees*

No. 1 CA-JV 16-0115
FILED 1-3-17

Appeal from the Superior Court in Maricopa County
No. JD28124
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Jeffrey M. Zurbriggen PC, Phoenix
By Jeffrey M. Zurbriggen
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jon W. Thompson joined.

---

**M c M U R D I E**, Judge:

¶1        Kristi S. ("Mother") appeals the juvenile court's order terminating her parental rights to A.T. She challenges the sufficiency of the evidence supporting termination. Because we conclude that the court's findings are supported by reasonable evidence, we affirm.

### BACKGROUND

¶2        Mother is the biological parent of A.T., born in April 2013.[1] Mother has a history of substance abuse, and A.T. was born substance exposed to methadone, Vicodin, and oxycodone.

¶3        In June 2013, after a domestic violence incident between Mother and Father, the juvenile court ordered Mother's parenting time to be supervised by A.T.'s maternal grandmother. A.T.'s best-interests attorney filed a dependency petition in April 2014 citing concerns related to Mother's history of drug use and domestic violence with Father.[2] In August 2014, for A.T.'s safety, DCS insisted that Mother leave the maternal grandmother's home because a hair follicle test was positive for heroin. The juvenile court found A.T. dependent as to Mother in September 2014.

¶4        DCS set a goal of reunification for Mother concurrent with severance and adoption and offered services including substance-abuse testing with TASC, substance-abuse treatment through TERROS, a psychological and neuropsychological evaluation, a psychiatric evaluation, individualized counseling with a focus on domestic violence, parent-aide

---

[1]        Aaron T. ("Father") had his parental rights terminated in a March 2016 proceeding. Because Father has not joined in this appeal, we do not review his termination.

[2]        The Department of Child Safety ("DCS") was later substituted as petitioner in the case.

services, and parenting classes. From August 2014 to January 2015, Mother tested positive for high levels of opiates.[3] Mother advised DCS that she had been in a car accident ten years before, which required surgery to put a metal cage in her back, and had been on prescription pain medication ever since. Mother participated in a psychiatric evaluation, a psychological evaluation, a neuropsychological evaluation, domestic violence classes, parent-aide services, and parenting classes. She failed to complete substance-abuse treatment and individualized counseling with a focus on domestic violence.

¶5         DCS was relieved from providing Mother with services in April 2015 after Mother decided not to contest the first severance petition filed by maternal grandmother. However, in August 2015 Mother requested that services be reinstated after DCS withdrew as co-petitioner from maternal grandmother's severance petition and filed a new motion for termination of the parent-child relationship.[4] DCS's motion alleged grounds pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(3), 8-533(B)(8)(a), and 8-533(B)(8)(c).[5]

¶6         A contested severance hearing took place in December 2015. Afterwards, the court ordered severance based upon all of the alleged grounds, which included Mother's inability to discharge her parental responsibilities due to substance abuse, and the child being in an out-of-home placement for more than nine months with a substantial likelihood that Mother would not be capable of exercising effective parental care in the near future. Mother timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution; A.R.S. § 8-235(A); and Arizona Rule of Procedure for the Juvenile Court 103(A).

---

[3]        Mother stopped testing completely in January 2015 and did not resume testing even after services resumed in August 2015.

[4]        Mother did not originally contest the first severance petition when A.T. was placed with maternal grandmother. After Father filed a motion for change in physical custody, which was eventually supported by DCS, DCS decided to withdraw from maternal grandmother's original severance petition and file its own. Mother contested DCS's renewed motion for termination of parental rights.

[5]        Absent material revision after the relevant date, we cite a statute's current version.

**DISCUSSION**

**¶7** The right to custody of one's child is fundamental, but it is not absolute. *Michael J. v. ADES*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). To support termination of parental rights, one or more of the statutory grounds for termination must be proven by clear and convincing evidence. A.R.S. § 8-537(B); *Shawanee S. v. ADES*, 234 Ariz. 174, 176-77, ¶ 9 (App. 2014). In addition, the court must find by a preponderance of the evidence that the termination is in the best interests of the child. A.R.S. § 8–533(B); *Mario G. v. ADES*, 227 Ariz. 282, 285, ¶ 11 (App. 2011).

**¶8** We view the evidence in the light most favorable to sustaining the juvenile court's findings. *Christina G. v. ADES*, 227 Ariz. 231, 234, ¶ 13 (App. 2011). As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of the witnesses, and resolve disputed facts." *ADES v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). We will accept the juvenile court's findings of fact unless no reasonable evidence supports those findings. *Jesus M. v. ADES*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).[6]

**A. Reasonable Evidence Supports a Termination of Parental Rights Under A.R.S. § 8–533(B)(3).**

**¶9** To justify termination of parental rights under A.R.S. § 8-533(B)(3), the juvenile court must find (1) that a parent's "history of chronic abuse of dangerous drugs, controlled substances or alcohol" renders the parent unable to discharge parental responsibilities, and (2) that "there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." In addition, DCS has an obligation to make reasonable efforts to provide appropriate services to preserve the family. *Mary Ellen C. v. ADES*, 193 Ariz. 185, 191–92, ¶¶ 30-34 (App. 1999).

**i. DCS Made Reasonable Efforts to Provide Reunification Services.**

**¶10** Mother first challenges the court's finding that DCS made reasonable efforts to provide reunification services. DCS provided services starting in April 2014 including substance-abuse testing with TASC, substance-abuse treatment through TERROS, a psychological and neuropsychological evaluation, a psychiatric evaluation, individualized

---

[6] Mother claims that the court should review the evidence *de novo* alleging that the juvenile court did not apply the correct legal standard to the facts in resolving the issues. The court finds nothing in the record to support Mother's claim and will therefore not review the evidence *de novo*.

counseling with a focus on domestic violence, parent-aide services, and parenting classes. While Mother did complete parent-aide services and some domestic-violence classes, she stopped attending the classes because they were too expensive. As a result, DCS provided an alternative in the form of counseling at no cost, but Mother never attended.

¶11 Mother also never completed the services offered for substance abuse through TERROS. Mother contends that TERROS would not allow her to participate in its services as long as she continued to take her prescription drugs. However, the DCS case worker at the trial testified that Mother refused TERROS services by signing a letter of refusal. Furthermore, TERROS offered to send Mother to a halfway house to assist in treatment, and Mother refused.

¶12 Instead, Mother argues that TERROS should have provided her with detox services, rather than the recommended halfway-house services, to help her with her addiction. But, the neuropsychologist who examined Mother recommended a halfway house, which is why TERROS offered her those services. The DCS case worker at trial testified that if Mother wanted to attend a detox center, TERROS was capable of making that referral as well. Regardless, Mother chose not to participate in the recommended halfway-house services.

¶13 While it is possible that Mother would have benefited from detox services, DCS is only required to provide Mother with the "opportunity to participate in programs designed to help her become an effective parent." *Matter of Appeal in Maricopa Cty. Juvenile Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS is "not required to provide every conceivable service." *Id.* Therefore, the court did not err by implicitly finding that the halfway house services recommended by TERROS were sufficient to meet the statutory requirements. Based on the amount of services provided by DCS, and the testimony of the DCS case worker at the contested severance hearing, there was sufficient evidence in the record for the juvenile court to conclude that DCS made reasonable efforts to provide reunification services.

### ii. Sufficient Evidence Supports a Conclusion That Mother Was Unable to Discharge Her Parental Responsibilities.

¶14 Mother also contends that there was insufficient evidence to show she was unable to discharge her parental responsibilities due to substance abuse. Mother admitted at trial that she had a problem with oxycodone and Xanax. Mother also testified at trial that she did not believe

she was able to parent A.T. appropriately when she was under the influence of the medication. Evidence in the record from Dr. Gallo, Mother's former primary-care physician, Dr. Parker, the psychiatrist who completed Mother's psychiatric evaluation, and the DCS case worker assigned to A.T., all supported the conclusion that Mother was unable to effectively parent due to her addiction. As a result, the juvenile court did not err in finding that Mother was unable to discharge her parental responsibilities as a result of substance abuse.

### iii.    Reasonable Grounds Support a Conclusion That Mother's Condition Would Continue for a Prolonged Indeterminate Period.

**¶15**        Finally, Mother argues there were not reasonable grounds to believe that her condition would continue for a prolonged indeterminate period. Mother points to testimony from her addiction counselor at the treatment program she was attending at the time of trial, stating that he believed her efforts were "genuine" and that she had a "good prognosis if she continue[d] to maintain the progress that she ha[d] made."

**¶16**        Mother has a long history of substance abuse dating back to 2004. She previously sought treatment in 2009, and after a period of sobriety she relapsed. At the time of the hearing, Mother had not completed substance-abuse treatment, and would not complete her program for at least five months.[7] *See Marina P. v. ADES*, 214 Ariz. 326, 330, ¶ 22 (App. 2007) (we review the circumstances as they exist at the time of the severance hearing). While Mother's efforts to seek treatment are noteworthy, a temporary abstinence from drugs does not necessarily overcome a parent's history of consistent abuse over a period of years. *See Raymond F. v. ADES*, 224 Ariz. 373, 379, ¶ 29 (App. 2010). Accordingly, we conclude that reasonable evidence existed for the juvenile court to find that Mother's condition would continue for a prolonged indeterminate period.

**¶17**        If this court concludes that one ground for severance is supported by the evidence, "we need not consider whether the trial court's findings justified severance on the other grounds announced by the court." *Michael J.*, 196 Ariz. at 251, ¶ 27. Therefore, because we find that reasonable evidence supported the termination of Mother's parental rights on the

---

[7]        There was additional testimony from the DCS case worker that even after completion of Mother's substance abuse program, DCS would need to see sustained sobriety in an unstructured setting before reunification could take place.

grounds identified in § 8–533(B)(3), we need not address the juvenile court's findings regarding § 8–533(B)(8).

## B. Reasonable Evidence Supports a Finding that Severance is in the Best Interest of A.T.

**¶18** Mother also contends severance of her parental rights is not in the best interests of the child. After the court has found a statutory ground for termination exists, then the court must also find by a preponderance of the evidence that termination is in the child's best interests. A.R.S. § 8–533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). "A determination of the [child's] best interest must include a finding as to how the [child] would benefit from a severance *or* be harmed by the continuation of the relationship." *Raymond F.*, 224 Ariz. at 379, ¶ 30 (citing *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990)). The court must consider whether (1) an adoptive placement is immediately available; (2) the existing placement is meeting the needs of the child; and (3) the child is adoptable. *Id.*

**¶19** The juvenile court found that severance was in the child's best interests because it would allow a plan of adoption with the paternal grandparents to move forward, providing A.T. with a safe and stable home. The court's ruling is supported by the fact that the child is already in a placement with the paternal grandparents that is meeting all of the child's needs. Furthermore, in the event that the paternal grandparents could not adopt A.T., the case worker testified that he is otherwise adoptable and has no special needs.

**¶20** Mother argues that severance was not in the child's best interests because her visits with the child "went well, they shared a bond," and that she "cared for the child day to day." While these facts support an argument that the child would not be harmed by the continuation of the parent-child relationship, the juvenile court need only find that the child would benefit from severance in order to make a best-interests finding. *See Raymond F.*, 224 Ariz. at 379, ¶ 30. Because reasonable evidence in the record supports the conclusion that the child would benefit from severance, we find no error in the juvenile court's determination.

**¶21** Mother also contends that the placement with the paternal grandparents is not in the child's best interests. After a parent's rights are severed, the parent lacks standing to challenge the child's placement. *See Sands v. Sands*, 157 Ariz. 322, 324 (App. 1988). Furthermore, Mother is appealing the severance of her parental rights, and not the placement of the

child, which is a separate issue. *See Antonio M. v. ADES*, 222 Ariz. 369, 370-71, ¶ 2 (App. 2009). The court does not weigh alternative placement options when determining if severance is in the child's best interests, only whether an existing placement is meeting the needs of the child or whether there is an adoptive placement immediately available. *Id.* at 371, ¶ 2 (quoting *Audra T. v. ADES*, 194 Ariz. 376, 377, ¶ 5 (App. 1998)). As a result, we decline to address this argument.

## CONCLUSION

**¶22**      For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights.

