NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

GUTHRIE S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.S., *Appellees*.

No. 1 CA-JV 16-0344
FILED 1-24-2017

Appeal from the Superior Court in Maricopa County
No. JD527936
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Chief Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Patricia A. Orozco joined.[1]

**B R O W N**, Chief Judge:

¶1        Guthrie S. ("Father") appeals the juvenile court's order terminating his parental rights to his son, challenging the sufficiency of the evidence supporting the statutory grounds for termination. Because reasonable evidence supports the court's order, we affirm.

## BACKGROUND

¶2        Father and Lindsey B. ("Mother")[2] are the biological parents of A.S. ("the child"), born in July 2014. The Department of Child Safety ("DCS") became involved almost immediately, after learning the child was born substance exposed and was diagnosed with Neonate Abstinence Syndrome. At the time of the child's birth, Father had pending criminal charges for armed robbery, burglary, and aggravated assault.[3] In August 2014, DCS filed a petition requesting an in-home dependency. Following a hearing, the court entered a preliminary protective order allowing Mother to maintain physical custody of the child, with a safety plan. From the outset of the safety plan, Father received supervised visits, parent aide services, substance abuse assessment, treatment and testing, and family preservation services.

¶3        The following week, DCS removed the child from Mother's care because the parents violated the safety plan. That same day, Father

---

[1]     The Honorable Patricia A. Orozco, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2]     Mother's parental rights to the child were also terminated in 2016 but she is not a party to this appeal.

[3]     In February 2016, Father pled guilty to armed robbery, a class two felony, in exchange for dismissal of the remaining charges. He was sentenced to three years' probation.

filed a motion for the return of the child. The juvenile court promptly conducted an evidentiary hearing to consider Father's request. The court denied Father's motion, finding Father's July 2014 hair follicle test was positive for cocaine, which contradicted his statements under oath that he had not used cocaine since the beginning of the year. The court also noted that although Father's pending criminal charges were "not grounds for removal of the child, given the other circumstances of the case, it . . . should be concerning." Finally, the court found that the parents took the child "from the safety monitor when they had no authority to do so and knowing they were violating" the court's orders. The child was placed in a licensed foster-care home.

¶4        The child was found dependent as to the parents in January 2015 and the court adopted a case plan of family reunification. With DCS's approval, Father completed intensive outpatient treatment with Calvary Recovery Inc. and the parents successfully completed parent aide services in June 2015. Parents continued to struggle, however, with substance abuse and treatment, and in October 2015 the court approved DCS's request to place the child with maternal grandmother in South Dakota. In November 2015, the case plan was changed to severance and adoption and DCS filed a motion for termination based on Arizona Revised Statutes ("A.R.S.") sections 8-533(B)(3) (chronic substance abuse) and 8-533(B)(8)(c) (fifteen months' out-of-home placement).

¶5        At the severance adjudication in August 2016, DCS case manager Carolyn Skytta testified that over the previous twenty-two months, there were numerous problems with Father's substance abuse test results including positive tests, failing to test, and attempts to manipulate tests. DCS made four referrals for Father to begin drug treatment through Terros, but he failed to complete any referral. Although Father completed the intensive outpatient program with Calvary, he failed to complete the recommended after-care. Father's last urinalysis test occurred in September 2015 and was positive for opiates. Skytta testified that Father failed to "have a full understanding of [his] substance abuse" and, in light of recent domestic violence allegations involving Mother and Father, she worried that the child "would be in danger of neglect and possible abuse."

¶6        The juvenile court granted the motion for termination on both statutory grounds. Addressing Father's substance abuse, the court reasoned in part as follows:

> While Father did successfully complete an Intensive Outpatient treatment with Calvary in June 2015 as stated

above, he did not follow through with aftercare treatment. His last drug test was September 10, 2015, after he completed the Calvary program. He tested positive for cocaine and opiates. He has not drug tested for DCS since then. To date, Father has not successfully completed a drug treatment program or demonstrated that he can maintain long-term sobriety.

. . . .

Before trial, Father disclosed three hair follicle tests each three months apart. These are tests he did on his own and not through DCS. Father asserts that this establishes his sobriety for the last nine months. The Court disagrees. Father has not demonstrated over the past two years that he can maintain long-term sobriety in order to parent [the child]. Father has not provided DCS a urinalysis test since September 2015. Further, Father has not successfully completed a drug treatment program.

The court also determined that termination was in the child's best interests, and this timely appeal followed.

## DISCUSSION

¶7        To support an order terminating parental rights, the juvenile court must find at least one statutory ground is supported by clear and convincing evidence. *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 78, ¶ 6 (App. 2005). Additionally, the court must find by a preponderance of the evidence that the termination is in the best interests of the child. *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 285, ¶ 11 (App. 2011); Ariz. Rev. Stat. § 8-533(B). As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of the witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). Accordingly, we will accept the court's findings of fact "unless no reasonable evidence supports those findings." *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997).

¶8        Under A.R.S. § 8-533(B)(3), the juvenile court may terminate parental rights to a child if "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." Chronic substance abuse is long-lasting but not necessarily

constant substance abuse. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010). Generally, a parent's temporary abstinence from drugs and alcohol does not outweigh a significant history of abuse or consistent inability to abstain during the case. *Id.* at 379, ¶ 29. And, a child's interest in permanency must prevail over a parent's uncertain battle with drugs. *Id.* (citing *In re N.F.*, 579 N.W.2d 338, 341 (Iowa App. 1998)).

**¶9** Father argues the juvenile court erred in finding him unable to discharge his parental responsibilities due to substance abuse. He asserts he demonstrated continued sobriety, pointing to his participation in the Calvary treatment program, and three hair follicle tests between December 2015 and May 2016 showing the absence of drug use. Father therefore contends that DCS failed to meet its burden of proving that he has a history of chronic substance abuse that would continue for an indeterminate period and prevent him from being able to parent the child.[4] Notwithstanding Father's efforts, we conclude that reasonable evidence supports the court's ruling.

**¶10** Contrary to Father's suggestion, § 8–533(B)(3) does not "require that the parent be found unable to discharge *any* parental responsibilities but rather that the parent be unable to discharge 'the parental responsibilities.'" *Maricopa Cty. Juv. Action No. JS–5894*, 145 Ariz. 405, 408 (App. 1985). Additionally, as the trier of fact, the juvenile court could properly consider the evidence of Father's prior substance abuse when evaluating whether reasonable grounds exist to conclude an inability to discharge parental responsibilities would continue for a prolonged and indeterminate period. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 283, 288, ¶ 20 (App. 2016). That evidence includes the length and frequency of Father's substance abuse, the types of substances abused, prior efforts to maintain sobriety, and prior relapses. *Id.* (internal quotations omitted).

**¶11** Father acknowledged a decades-long history of substance abuse dating from his teen years until the birth of the child and continuing through much of the dependency proceedings. Father maintained that he was "clean and sober" at the time of the hearing and presented the three hair follicle tests. However, Father did not submit any drug test results in the three months leading up to the severance hearing to demonstrate sobriety during that critical time. Additionally, DCS records indicate

---

[4] Father does not challenge any specific factual finding made by the juvenile court nor does he challenge the court's legal conclusion that he has a history of chronic drug abuse.

Father missed more than 40 required drug tests during the nearly two years between August 2014 and April 2016.

¶12 At different times in this proceeding, Father tested positive for various substances including heroin, cocaine, morphine, hydromorphone, codeine, oxycodone, oxymorphone, methamphetamine, and amphetamines. Father admitted to frequent use of substances throughout the case. Father's last urinalysis was taken in September 2015, after he completed the treatment program at Calvary, and it was positive for opiates, cocaine, and heroin. Although Father testified that he completed the aftercare program with Calvary and participated with a mentor, he did not provide any confirming documentation, and the records DCS obtained from Calvary did not reflect such participation. These facts support the caseworker's opinion that Father was unable to provide the child a safe and sober environment, and that reasonable grounds existed to believe that Father's condition would continue for a prolonged, uncertain period of time.

¶13 Father's temporary abstinence from drugs, as suggested by three hair follicle tests, does not outweigh his significant history of abuse or his consistent inability to abstain during this case. *See Raymond F.,* 224 Ariz. at 379, ¶ 29 (explaining that when a parent consistently fails to remedy substance abuse, despite knowing the loss of a child is imminent, the parent has not overcome his or her dependence on drugs). The evidence in this record is sufficient to support the juvenile court's findings that Father is unable to discharge his parental responsibilities due to chronic substance abuse and that there are reasonable grounds to believe the condition will continue for a prolonged indeterminate period.[5]

---

[5] Because we conclude that reasonable evidence supports termination for chronic substance abuse, we need not address the out-of-home placement ground. *See Jesus M. v. Ariz. Dep't of Econ. Sec.,* 203 Ariz. 278, 280, ¶ 3 (App. 2002) (stating if sufficient evidence supports any of the statutory grounds on which the court ordered severance, it is unnecessary to address arguments relating to the other grounds). Similarly, as Father does not challenge the juvenile court's best interests finding, we need not address it.

## CONCLUSION

**¶14**      Based on the foregoing, the juvenile court's order terminating Father's parental rights to the child is affirmed.

