NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

KANDYSE A., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, Y.A., V.A., *Appellees.*

No. 1 CA-JV 16-0403
FILED 3-30-17

---

Appeal from the Superior Court in Maricopa County
No. JD528021
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

---

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Jon W. Thompson joined.

---

**H O W E**, Judge:

¶1        Kandyse A. ("Mother") appeals the juvenile court's order terminating her parental rights to her minor children Y.A. and V.A. Mother argues that the Department of Child Safety (the "Department") failed to make diligent efforts to provide her dialectical behavioral therapy ("DBT") and that the juvenile court erred by finding that she would be incapable of exercising proper parental care in the near future. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        The Department initially got involved with Mother when she left her two children with their grandmother for three months. While Mother was away, the grandmother obtained temporary guardianship of the children. Mother returned to Arizona and petitioned the court to revoke the temporary guardianship, arguing that she never consented to the guardianship and that she did not "want [the children] raised the way [she] was." The court returned the children to Mother.

¶3        The children's guardian ad litem then petitioned for dependency. The Department and Mother moved to dismiss the petition, which the juvenile court granted. After it dismissed the dependency petition, the juvenile court assigned a court appointed special advocate to Mother and directed Mother to participate in a Family Preservation Team and other services. Mother again left the children with their grandmother, however, and in October 2014, the Department petitioned for dependency.

¶4        The Department alleged that Mother left the children with their grandmother after the Department told her several times that the grandmother was an inappropriate caregiver. The Department further alleged that Mother neglected the children and was unable to parent due to unstable housing and mental health issues. Mother denied the allegations but submitted the issue of dependency to the juvenile court, which found in February 2015 that the children were dependent. Both children were

placed with their maternal great-uncle and great-aunt, where they remained during the entirety of the juvenile court proceedings.

¶5        To facilitate the goal of family reunification, the Department offered Mother a variety of services. The Department referred Mother for a psychological evaluation and offered a parent aide and supervised visitation. The psychologist noted that Mother had a "personality disorder with issues involving trust," and that she would need an array of services to help her gain "minimally adequate" parenting skills. He recommended that Mother participate in individual counseling, parenting classes, and continue with her parent aide. The Department referred Mother to individual counseling, but when Mother failed to return the counselor's calls or to attend any meeting, the referral expired.

¶6        Mother's first parent aide service closed in April 2015 because she failed to attend almost all the parenting skills sessions with the parent aide and missed more than half of her supervised visits. When Mother did attend supervised visitations, she often had to be told how to effectively parent the children. The Department referred Mother to another full parent aide service. In July 2015, the children started showing significant signs of behavioral problems stemming from their visits with Mother. At visits, the children would yell and hit Mother and Mother would fail to follow through with proper discipline. The children also experienced additional behavioral problems at their great-uncle and great-aunt's house and at daycare. Y.A. became aggressive with her teachers and other children at daycare. When the parent aide and case manager discussed the issues with Mother, Mother became defensive. Mother stated that all of the services were useless and that she did not understand why the Department was involved with her children.

¶7        After consulting with the unit psychologist about the children's behavioral problems and Mother's failure to address her mental health issues, the Department moved to suspend visitation. In September 2015, the juvenile court ordered that the visits be suspended until the children's behavioral problems and Mother's mental health issues and lack of parenting skills could be addressed. The unit psychologist also recommended that Mother participate in DBT because she failed to participate in individual counseling. Mother participated in the DBT from October 2015 until March 2016 when the authorization period ended. The DBT therapist reported that Mother canceled the first two sessions, three sessions in December, and one in January.

¶8        Although Mother told the DBT therapist that she was living on a friend's couch, she refused to notify the Department itself of where she was living. Mother also seemed confused about what the Department expected of her. She stated to the therapist that all she needed to do to get her children back was to complete the DBT. The DBT therapist reminded Mother to think about housing and employment stability and emotional regulation. The therapist believed that an extension of therapy would be necessary to make up for the lack of consistency. The Department sought an extension for the DBT.

¶9        In the meantime, the juvenile court changed the case plan at the Department's request to severance and adoption. The Department therefore moved to terminate Mother's parental rights to the children on two grounds: (1) mental illness under A.R.S. § 8–533(B)(3) and (2) 15 months in an out-of-home placement pursuant to court order under A.R.S. § 8–533(B)(8)(c).

¶10        In May 2016, Mother began therapeutic visitations with the children. The Department's goals for Mother were for her to properly redirect the children, maintain their safety throughout the visits, give the children positive reinforcement and encouragement, and get the children to obey the playroom's rules. Instead, Mother allowed the children to misbehave and disobey the rules at visits and refused to properly redirect or discipline the children. Mother would often have the therapist redirect or discipline the children because she did not want them to be mad at her. Although the therapist would model how to effectively do this, Mother failed to do so herself. Oftentimes, Mother seemed disinterested in interacting with the children, failed to ever bring a diaper bag, and only brought activities occasionally. The children again started experiencing behavior problems when visiting with Mother and started exhibiting signs of aggression after leaving visits.

¶11        Mother began attending DBT again in June 2016. During DBT sessions, Mother expressed her frustrations with having to redirect and discipline the children during visits. The DBT therapist consulted with the visitation therapist to help Mother better understand what was expected of her during visitations. In August 2016, the DBT therapist discussed the issues occurring in therapeutic visitations and Mother became defensive, "shut down, and left the session early."

¶12        At the September 2016 severance hearing, the case manager testified that Mother failed to remedy the circumstances that caused the children to be in the Department's care and that Mother would be unlikely

4

to effectively parent the children in the near future. She stated that although Mother had stable housing and employment at the time of the trial, throughout the entirety of the case Mother had moved at least ten times and had several short term jobs. The case manager admitted that a possibility existed that with more time Mother might be able to make the necessary behavioral changes, but that "the amount of time [the children] have been in care and the lack of behavior changes" by Mother warranted severing Mother's parental rights.

¶13　　　　The case manager testified further that the children had consistency and stability with their great-uncle and great-aunt and were doing very well with them. At the time of the trial, the children had lived there for almost two years—the majority of their lives. The case manager stated that the great-uncle and great-aunt were meeting the children's needs and that they were willing to adopt.

¶14　　　　The visitation therapist discussed Mother's performance at visitations and the children's attitudes. The children continued to behave aggressively towards Mother and themselves while in visits. The therapist stated that the children only acted this way when visiting with Mother and not when she saw them with the great-uncle and great-aunt. Additionally, the therapist explained that Mother had only minimally progressed in learning how to effectively parent the children and that serious concerns still existed. The children were often very aggressive with each other, climbed on the couch and table, and tried to run out of the sessions. The DBT therapist also testified that Mother had started to make some progress in the months leading up to the severance hearing but that Mother would still need another six months if she remained consistent to fully benefit from the DBT.

¶15　　　　After the severance trial concluded, the juvenile court conducted a report and review hearing. The Department moved for a reasonable efforts finding and although Mother had never objected to a reasonable efforts finding before, objected to the requested finding. The juvenile court made the reasonable efforts finding and terminated Mother's parental rights under both the mental illness and 15 months in an out-of-home placement grounds. The juvenile court also found that termination was in the children's best interests because the great-uncle and great-aunt were meeting all the children's needs and severance would further the plan of adoption and provide permanency and stability for the children. Mother timely appealed.

## DISCUSSION

### 1. Statutory Ground for Termination

¶16        Mother argues that the Juvenile Court erred by finding that the Department made diligent efforts to provide her with reunification services and that she would be incapable of exercising proper parental care in the near future. We review a juvenile court's termination order for an abuse of discretion. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58 ¶ 9, 344 P.3d 842, 844 (App. 2015). Further, "if clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3, 53 P.3d 203, 205 (App. 2002).

¶17        To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination, and find by a preponderance of the evidence that termination is in the child's best interests. *See* A.R.S. §§ 8–533(B), –537(B); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15, 378 P.3d 725, 729 (App. 2016). To terminate parental rights for 15 months in an out-of-home placement, the juvenile court must find that (1) the children have been in an out-of-home placement for a cumulative period of 15 months or longer pursuant to court order, (2) the parent has been unable to remedy the circumstances that caused the children to be in an out-of-home placement, (3) a substantial likelihood exists that the parent will not be capable of exercising proper and effective parental care and control in the near future, and (4) the Department had "made a diligent effort to provide appropriate reunification services." A.R.S. § 8–533(B)(8)(c); *see also Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 177 ¶ 9, 319 P.3d 236, 239 (App. 2014).

¶18        Mother does not discuss the first two requirements in her appeal but the record supports the juvenile court's finding that the elements were satisfied. The children were removed from Mother's care in October 2014 and the severance trial occurred in September 2016—a span of 23 months. Further, the juvenile court found that Mother failed to remedy the circumstances that led to the Department taking custody of the children. Mother was initially provided a parent aide to supervise visitations with the children and help Mother learn parenting skills. Mother was unable to effectively parent during visitations even with the help of the parent aide. This parent aide service closed out after Mother failed to attend any parenting skills sessions and missed the majority of her visits. At the time of the severance trial, Mother had been participating in therapeutic

visitations with the children for four months. The therapist reported that Mother made little progress in redirecting and disciplining the children and often showed up unprepared for visits. Thus, the record supports these two findings.

**¶19**        The record also supports the juvenile court's finding that a substantial likelihood existed that Mother would be unable to effectively parent in the near future. At the beginning of the therapeutic visitations, the Department had specific goals for Mother to accomplish. Mother needed to effectively parent during visits by redirecting and disciplining the children, giving the children positive reinforcement, maintaining the children's safety, and helping the children obey the playroom rules. The therapist testified that Mother rarely redirected the children and often asked her to do it instead. She further explained that when Mother did try to redirect the children, the redirection was at a very basic level and Mother rarely followed through. Although the DBT therapist and case manager mentioned that Mother *could* continue progressing if she remained consistent in services, she still was not effectively parenting after receiving services for almost two years. Therefore, sufficient evidence supports the juvenile court's finding that a substantial likelihood existed that Mother would be unable to effectively parent in the near future.

**¶20**        When seeking termination of parental rights under the 15 months in an out-of-home placement ground, the Department has an obligation to make diligent efforts to provide reunification services. A.R.S. § 8–533(B)(8). The Department "must provide services to the parent with the time and opportunity to participate in programs designed to help her to become an effective parent." *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235 ¶ 14, 256 P.3d 628, 632 (App. 2011). The Department, however, is not required to provide every conceivable service or provide services that are futile. *Id.*

**¶21**        The Department argues that Mother waived the diligent efforts argument because she failed to timely raise it below. A parent who does not object to the Department's efforts to provide reunification services at the juvenile court waives that argument on appeal. *Shawanee S.*, 234 Ariz. at 178 ¶ 13, 319 P.3d at 240. After the evidentiary phase of the severance trial ended, the juvenile court held a report and review hearing where the Department moved for a reasonable efforts finding. Mother had previously failed to raise the issue or otherwise object before, but objected to such a finding at that time. The Department contends that this objection was untimely and therefore waived on appeal. Because the record supports a conclusion that the Department made diligent efforts to provide

7

reunification services, however, we need not determine whether waiting until the last day of juvenile court proceedings to object to a reasonable efforts finding waives that argument on appeal.

**¶22** The Department provided Mother with services before it petitioned for dependency in October 2014. After the dependency was determined, the Department provided Mother with a court appointed special advocate, supervised visitations, parent aides, transportation, a psychological evaluation, individual counseling, DBT counseling, and therapeutic visitations. After Mother's psychological evaluation recommended that she participate in individual counseling, the Department submitted a referral for Mother. Mother failed to attend. Then, when supervised visitations with the children were suspended, the unit psychologist recommended that Mother participate in DBT. The DBT therapist reported that an extension would likely be needed because of Mother's inconsistency and defensiveness in the sessions. The Department submitted a request for the extension, but the DBT stopped for three months before the extension received approval. Although Mother contends otherwise, this short break in the DBT sessions, without more, is not enough to find diligent efforts were not made. Further, even after the Department requested a change in the case plan and moved to terminate parental rights, it provided Mother with therapeutic visitations. Thus, on this record, the juvenile court did not err by finding that the Department made diligent efforts to provide family reunification services. Accordingly, the juvenile court did not err by finding by clear and convincing evidence the 15 months in an out-of-home placement ground under A.R.S. § 8–533(B)(8)(c).

## 2. Best Interests

**¶23** Mother fails to discuss the best interests finding and accordingly has waived any objection to the court's finding; however, the record more than adequately demonstrates that termination of Mother's parental rights was in the children's best interests. Termination of parental rights is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288 ¶ 26, 257 P.3d 1162, 1168 (App. 2011). Factors the juvenile court look at in determining whether a child will benefit from severance include whether: (1) the current placement is meeting the child's needs, (2) an adoptive placement is immediately available, and (3) the child is adoptable. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379 ¶ 30, 231 P.3d 377, 383 (App. 2010).

¶24    Here, the record supports the juvenile court's finding that termination was in the children's best interests. The case manager testified that the children's great-uncle and great-aunt were meeting all the children's needs and that the children were doing very well there. The case manager further testified that if severance were to occur the great-uncle and great-aunt were willing to adopt. This evidence is sufficient to support the juvenile court's finding that severance was in the children's best interests.

## CONCLUSION

¶25    For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:        JT