NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MAYRA T., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.L., *Appellee*.

No. 1 CA-JV 16-0380
FILED 4-11-2017

Appeal from the Superior Court in Maricopa County
No. JD22058
The Honorable Dawn Bergin, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Patricia K. Norris joined.

---

**M c M U R D I E**, Judge:

**¶1**        Mayra T. ("Mother") appeals the superior court's termination of her parental rights to C.L. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Mother is the biological parent of C.L., born in February 2015. The Department of Child Safety ("DCS") took temporary custody of C.L. in March 2015, after making an unannounced visit to Mother's home finding her extremely intoxicated and alone with C.L. DCS filed a dependency petition on the grounds of substance abuse and neglect; C.L. was found dependent in May 2015.

**¶3**        Mother's rights to two other children were terminated in 2014 due to substance abuse. As part of the services offered by DCS in that case, Mother underwent a psychological evaluation in November 2012, which reported diagnostic impressions of anxiety disorder, alcohol abuse, and borderline intellectual functioning. In April 2013, a neuropsychological evaluation of Mother also found she had difficulty with executive function and trouble maintaining concentration and attention. As part of the services offered by DCS in this proceeding, Mother received two more psychological evaluations in May 2016 and June 2016. The first was conducted by the same doctor that performed the evaluation in 2012, and the second was performed by a different psychologist; both provided similar diagnoses.

**¶4**        In October 2015, DCS moved to sever Mother's parental rights to C.L. on the grounds she was unable to discharge her parental responsibilities because of a mental deficiency that would continue for a prolonged, indeterminate period under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3) (2016).[1] A two-day contested severance hearing was held

---

[1]        Absent material revision after the relevant date, we cite a statute's and rule's current version.

in June 2016, and the superior court found sufficient grounds to terminate Mother's parental rights. Mother timely appealed and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution; A.R.S. § 8-235(A); and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

**¶5**　　　Mother argues the superior court erred by finding: (1) sufficient evidence existed proving Mother was unable to discharge her parental responsibilities due to her mental deficiency; and (2) the severance was in the best interests of the child.

**¶6**　　　The right to custody of one's child is fundamental, but it is not absolute. *Michael J. v. ADES*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). To support termination of parental rights, one or more of the statutory grounds for termination must be proven by clear and convincing evidence. A.R.S. § 8-537(B); *Shawanee S. v. ADES*, 234 Ariz. 174, 176–77, ¶ 9 (App. 2014). In addition, the court must find by a preponderance of the evidence that termination is in the best interests of the child. A.R.S. § 8-533(B); *Mario G. v. ADES*, 227 Ariz. 282, 284–85, ¶ 11 (App. 2011).[2]

**¶7**　　　We view the evidence in the light most favorable to sustaining the superior court's findings. *Christina G. v. ADES*, 227 Ariz. 231, 234, ¶ 13 (App. 2011). As the trier of fact, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *ADES v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). We will accept the superior court's findings of fact unless no reasonable evidence supports those findings. *Jesus M. v. ADES*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

**¶8**　　　To justify termination of parental rights under A.R.S. § 8-533(B)(3), DCS must prove by clear and convincing evidence: (1) the parent is unable to discharge parental responsibilities because of a mental illness or mental deficiency; and (2) there are reasonable grounds to believe

---

[2]　　　DCS is also required to provide reasonable rehabilitative services to a parent before seeking severance on the mental-deficiency ground. *Mary Ellen C. v. ADES*, 193 Ariz. 185, 192, ¶ 34 (App. 1999). However, Mother does not dispute that DCS provided reasonable rehabilitative services to her before seeking severance.

that the condition will continue for a prolonged indeterminate period. *Denise R. v. ADES*, 221 Ariz. 92, 95, ¶ 11 (App. 2009).

**¶9** Mother contends insufficient evidence existed at trial to show that she was unable to discharge her parental responsibilities due to a mental deficiency.[3] In November 2012, Dr. DeSoto performed a psychological evaluation of Mother and listed a diagnostic impression that Mother had Borderline Intellectual Functioning. Dr. DeSoto concluded at that time there were "significant concerns regarding [Mother's] ability to adequately parent her children independently" and she gave Mother "a poor prognosis in demonstrating minimally adequate parenting in the foreseeable future." In April 2013, Dr. Walter, a neuropsychologist, found that Mother showed difficulty with executive function and had difficulty maintaining attention and concentration. When Dr. DeSoto reevaluated Mother in May 2015, she found her intellectual and cognitive limitations "remain[ed] unchanged." In June 2016, an additional psychological evaluation conducted by Dr. Levitan "retained" the previous diagnoses related to her cognitive abilities.

**¶10** Mother argues the evidence did not establish her mental deficiency prevented her from being a "minimally adequate parent." *Vanessa H. v. ADES*, 215 Ariz. 252, 256 (App. 2007). However, *Vanessa H.* does not set out a standard that a parent need only be "minimally adequate." The test, under the statute, asks the court to decide if there is clear and convincing evidence Mother was unable to discharge her parental responsibilities due to a mental deficiency. A.R.S. § 8-533(B)(3). Reviewing the superior court's finding that Mother was unable to discharge her parental responsibilities, we find substantial evidence to support that conclusion. Three different doctors found Mother to have cognitive limitations that would hinder her ability to safely parent. When specifically asked about Mother's ability to parent, Dr. DeSoto opined "[Mother's] history and trajectory clearly shows an inability to parent despite her (at times) diligent participation in services." Accordingly, we find no error.

**¶11** Mother also argues the court erred by finding the severance was in the best interests of the child because it did not consider evidence

---

[3] Mother also claims in her briefing the issue of mental deficiency was not originally raised by DCS, but instead they "switch[ed]" to that ground later in the case. This is inaccurate. DCS's current dependency petition and motion for termination of parental rights both cite this ground.

related the child's potential quality of life in Guatemala.[4] "[A] determination of the [child's] best interest must include a finding as to how the [child] would benefit from a severance or be harmed by the continuation of the relationship." *Raymond F. v. ADES*, 224 Ariz. 373, 379, ¶ 30 (App. 2010) (citing *Maricopa County Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990)). The court will consider whether (1) an adoptive placement is immediately available; (2) the existing placement is meeting the needs of the child; and (3) the child is adoptable. *Id.*

¶12        The superior court found severance was in the best interests of the child because C.L. was doing well in his adoptive placement and severance would allow "much-needed permanency for C.L." The court's finding is supported by the testimony of the DCS Child Safety Specialist assigned to the case, who testified that C.L. was currently placed in a licensed foster home that was meeting all the child's needs and was willing and able to adopt him. The Child Safety Specialist also testified that C.L. has no special needs and would otherwise be adoptable.

¶13        Mother does not deny the child benefits from his current placement, but instead contends that C.L. could potentially benefit from the public services offered by the Guatemalan government if he were to move there with Mother. Furthermore, Mother claims DCS should have contacted the Guatemalan consulate after they took temporary custody of C.L. because Article 37 of the Vienna Convention on Consular Relations requires authorities to inform a foreign country's consulate when a guardian has been appointed for a citizen of that country.

¶14        At trial, a representative from the Guatemalan consulate spoke to the court about a variety of public services that could be offered to Mother and C.L. if she were to return there. His statements revealed C.L. was not considered by the Guatemalan government to be a citizen of Guatemala. Accordingly, Mother's argument regarding Article 37 of the Vienna Convention on Consular Relations does not apply because C.L. is not a citizen of Guatemala. Vienna Convention on Consular Relations art. 37, Mar. 19, 1967, 21 U.S.T. 77, 596 U.N.T.S. 261.

¶15        While there is a possibility C.L. could benefit from some government services offered if Mother were to return to Guatemala, the superior court must find only that the child would benefit from severance

---

[4]        Mother was born in Guatemala and moved to the United States in 2007, she is not a United States citizen. C.L. was born in the United States, and is therefore a United States citizen, but is not a citizen of Guatemala.

*or* be harmed by the continuation of the parent-child relationship. *Raymond F.*, 224 Ariz. at 379, ¶ 30. Mother's argument does not address either. However, the testimony of the Child Safety Specialist did show the child would benefit from severance and the superior court found this persuasive. Accordingly, the superior court did not err by finding that severance was in the best interests of C.L.

## CONCLUSION

¶16      For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA