NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CANDELARIA P., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.D., *Appellees.*

No. 1 CA-JV 17-0288
FILED 1-23-2018

Appeal from the Superior Court in Maricopa County
No. JD506588
The Honorable David J. Palmer, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll Attorney at Law, Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Patricia A. Orozco[1] joined.

---

**C R U Z**, Judge:

**¶1** Candelaria P. ("Mother") appeals the superior court's order terminating her parental rights to her daughter, C.D., born in 2007.[2] For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2** In January 2012, the Department of Child Safety[3] ("DCS") removed C.D. from Mother's care because she failed to arrange for appropriate care for her children prior to her incarceration and she admitted substance abuse.[4] At that time, DCS filed a dependency petition

---

[1] The Honorable Patricia A. Orozco, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2] The superior court terminated the father's parental rights in December 2016. He is not a party to this appeal.

[3] Child Protective Services ("CPS") was formerly a division of the Arizona Department of Economic Security ("ADES"). Effective May 29, 2014, the Arizona legislature repealed the statutory authorization for creation of CPS and for ADES's administration of child welfare and placement services under Title 8 of the Arizona Revised Statutes, and the powers, duties, and purposes from those entities were transferred to the newly established DCS. *See* S.B. 1001 § 157(D), 51st Leg., 2nd Spec. Sess. (Ariz. 2014); ARCAP 27. Accordingly, DCS has been substituted for CPS and ADES in this matter. For simplicity, our references to DCS in this opinion encompass both ADES and the former CPS, as appropriate.

[4] C.D. was one of five children named in the first dependency petition.

alleging neglect and Mother's incarceration and substance abuse history, which began in 1998.

**¶3**        In March 2012, the superior court found C.D. dependent. Consistent with the case plan of family reunification, DCS offered Mother numerous services including drug testing, substance-abuse treatment, visitation, a parent aide, and a referral for a psychological consultation. By August 2012, Mother complied with all the tasks outlined in the case plan and parole. She participated in a parent aide intake, maintained regular contact with DCS, and submitted to drug screening. DCS moved to place C.D. back in Mother's physical custody in October 2012, and three months later the court dismissed the first dependency petition.

**¶4**        In April 2015, DCS took C.D. into temporary custody because Mother left C.D. with family members, had not been seen in a month, and failed to provide the necessary paperwork to enable them to enroll C.D. in school. DCS filed a second dependency petition alleging neglect, abandonment, and substance abuse.[5] The following month, Mother denied the allegations but submitted the issue of dependency to the superior court for determination. The court found C.D. dependent as to Mother. DCS provided a psychological consultation, drug screening and assessment, visitation, a case aide, transportation, and the court instructed Mother to self-refer for counseling. DCS further required Mother to obtain and maintain employment and stable housing.

**¶5**        In October 2015, Mother was homeless and unemployed and her treatment providers closed out the substance abuse screening and treatment services due to noncompliance. C.D. fell extremely behind academically due to irregular school attendance while in Mother's care and suffered from speech delay as well as other medical issues which had gone unaddressed. DCS assigned Mother a visitation aide, but she missed visits and failed to call in to confirm visitation. DCS moved to change the case plan to severance and adoption in February 2016.

**¶6**        In March 2016, DCS filed a motion for termination on the grounds of chronic substance abuse under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(3) and out-of-home placement for nine months or longer under § 8-533(B)(8)(a). Mother failed to participate in treatment

---

[5]        C.D. was one of two children named in the second dependency petition and is the only child subject to this appeal.

services, and DCS closed out her third substance-abuse treatment referral for lack of participation.[6]

¶7     Mother visited C.D. inconsistently and failed to have any contact for over a year.  In May 2016, Mother reengaged in visitation, and DCS assigned a case aide to facilitate visitation.  But, when C.D. was possibly going to reunify with her father, DCS moved to withdraw the motion for termination.

¶8     The superior court changed the case plan back to family reunification.  DCS offered Mother behavioral health, parent aide, substance-abuse treatment, and transportation services.  Mother submitted clean drug screenings on a weekly basis beginning in July 2016,[7] and she completed an inpatient treatment program in September 2016.  However, Mother declined to participate in outpatient treatment and failed to appear for a parent aide intake appointment, and the service provider closed out the referral.

¶9     The superior court changed the case plan to severance and adoption in November 2016, and, shortly thereafter, DCS moved to terminate Mother's parent-child relationship pursuant to § 8–533(B)(8)(c) (fifteen months out-of-home placement).  Mother was homeless, unable to provide for C.D.'s needs, and failed to address her substance abuse issues.

¶10     A service provider diagnosed Mother with a moderate amphetamine-use disorder and referred her to outpatient treatment.  She agreed to participate in substance abuse treatment and testing and individual counseling.  However, visitation rarely occurred due to the child's resistance.  Although C.D. attended only one visit in the presence of a case aide, DCS continued to encourage C.D. to see Mother by inviting relatives to visit at the same time, knowing C.D. had fond memories with them, but the child still refused to participate.

¶11     The superior court held a severance hearing in March 2017, and DCS presented evidence of Mother's long history of substance abuse

---

[6]     DCS referred Mother to TERROS for substance-abuse treatment four times during the course of Mother's dependency proceedings; twice in 2015 and twice in 2016.

[7]     Mother's first hair follicle drug screening in July 2016 tested positive for methamphetamine, opiates, and marijuana.

and neglect of C.D. and indicated Mother would be unable to parent in the near future. The DCS case manager testified she would require a full year of proven sobriety without relapse before feeling comfortable recommending reunification. Further, despite DCS's determination to "try anything," it was against DCS policy to force C.D. into visitation when she was firmly against it.

**¶12** The DCS case manager further testified that Mother failed to demonstrate longevity of sobriety, stability, and housing. And although Mother's drug screenings were clean for illicit drugs since July 2016, she failed to call in for random drug testing nine times in the month of the severance hearing and tested positive for alcohol consumption in the previous month.[8]

**¶13** Following the hearing, the superior court found that DCS proved both grounds for termination and that termination was in the best interests of C.D.

**¶14** Mother timely appealed the court's order. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶15** To terminate parental rights, the superior court must find by clear and convincing evidence that at least one statutory ground articulated in § 8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). As the trier of fact, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of the witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). Accordingly, we will accept the superior court's findings of fact "unless no reasonable evidence supports those findings." *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555 (App. 1997).

**¶16** To prevail on its motion to terminate Mother's parental rights pursuant to § 8-533(B)(8)(c), DCS was required to show that the child has been in an out-of-home placement for fifteen months or longer, Mother "has been unable to remedy the circumstances that cause[d] the child to be in an

---

[8] Mother also tested positive for benzodiazepine but testified she has a prescription for Xanax, which is a benzodiazepine-based medication.

out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c). Moreover, DCS had to prove that it "made a diligent effort to provide appropriate reunification services" to justify termination of the parent-child relationship. A.R.S. § 8–533(B)(8); *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 177, ¶ 12 (App. 2014) (internal quotation omitted).

¶17      Mother argues that DCS failed to prove she would not be capable of exercising proper and effective parental care and control in the near future.[9]  In its termination order, the superior court explained its findings, in part, as follows:

> Mother has taken legitimate steps toward sobriety, for the first time in the long history of this case. However, given the severity and length of her history, the court does not find that prolonging the case is in the child's best interest. The case manager testified that in a case where substance abuse is significant, which Mother's certainly is, a year's sobriety is a benchmark for determining if Mother has truly proven her sobriety. . . . Mother . . . went for a period of time of about a year without seeing her child. . . . Some visits did occur, but on many occasions they did not due to apprehension on the part of the child. . . . [T]he child did not wish to go out of her fear of being taken someplace and not being brought back.

¶18      At the severance hearing, the DCS case manager opined that Mother would not be able to parent in the near future because of her, "long history of substance abuse and neglect[,]" as well as her "[i]nstability with housing which has rendered the child vulnerable for a prolonged time." Although Mother participated in drug testing, she did not do so consistently. And during the pendency of the case, Mother failed to take advantage of visitations for at least a year.

¶19      DCS received sixteen reports regarding Mother beginning in 1998 and each report related to substance abuse and neglect. Although

---

9      Mother does not appeal the superior court's finding that DCS made diligent efforts and we therefore do not address the accuracy of that finding. *Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960) (stating that, where a trial court's finding of fact are unchallenged, "we may assume that their accuracy is conceded.").

Mother had demonstrated periods of sobriety lasting one or two years in the past, she has never demonstrated an ability to maintain sobriety long term.

¶20        The record confirms Mother recently made substantial progress in the reunification services offered; however, that is not the only relevant factor in determining whether DCS met its burden of proof. Instead, we must look at all the circumstances of the case.

¶21        At the time of severance, C.D. had been in out-of-home care for approximately two years.  In the period preceding the superior court's termination order, Mother failed to appreciate and consistently respond to DCS's concerns regarding her substance-abuse issues as well as maintain a relationship with C.D.  Mother failed to participate in C.D.'s life for substantial periods of time and even during times of contact, Mother's engagement was inconsistent.  As a result, C.D. has refused visitation and shown signs of apprehension and concern that she will be forced to leave her placement and return to Mother.  The record supports the court's finding of a statutory ground for termination.

¶22        Mother also argues the superior court erred in finding termination to be in the best interests of C.D., arguing only that she is bonded to C.D. and that C.D. would suffer a detriment if their parent-child relationship were severed.  Termination is in the child's best interests if the child will "derive an affirmative benefit from termination or incur a detriment by continuing in the relationship." *Oscar O.*, 209 Ariz. at 334, ¶ 6.  "In making the determination, the juvenile court may consider evidence that the child is adoptable or that an existing placement is meeting the needs of the child." *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288, ¶ 26 (App. 2011).

¶23        The record supports the superior court's ruling.  The case manager testified C.D. is adoptable and that paternal aunt and uncle are willing to adopt.  C.D. has expressed the desire to remain with the paternal aunt permanently.  Moreover, the case manager explained C.D.'s placement would provide her with permanency and safety and meets all of her physical, educational, medical, and psychological needs.  Therefore, the court did not err in finding termination of Mother's rights was in C.D.'s best interests.

## CONCLUSION

**¶24** For the foregoing reasons, we affirm the superior court's termination of Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA